Michael Shannon **DOHERTY,**
Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–88–01153–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 30, 1989.

Paul G. Johnson, Angleton, for appellant.

Jim Mapel, Criminal Dist. Atty., James L. Turner, Asst. Dist. Atty., Angleton, for appellee.

Before WARREN, DUGGAN and MIRABAL, JJ.

## OPINION

MIRABAL, Justice.

The jury convicted appellant of murder, and assessed punishment at life imprisonment.

Alexander Paul Schlicher died of multiple shotgun wounds from a gun fired at close range at a fireworks stand near Pearland, Texas on July 3, 1987. There was evidence that Schlicher had been robbed. Appellant knew the deceased and had, at times, been seen at the fireworks stand. There were no eyewitnesses to the shooting. Appellant gave no written confession, but allegedly made certain oral statements that were admitted into evidence. Appellant had no prior criminal record and was eligible for probation.

After an evidentiary hearing, the trial court denied appellant's motion for new trial.

In his first point of error, appellant contends that he was denied effective assistance of counsel.

The State's case against appellant was based on circumstantial evidence: appellant was seen with the deceased shortly before his death; appellant was seen with blood on his clothes, and there was blood in his car after the death; the shotgun used to kill the deceased was found in appellant's home; appellant possessed and spent an unusually large sum of money immediately after the murder.

Appellant's first trial counsel withdrew because counsel and appellant could not agree on counsel's fee. With trial imminent, appellant's family retained Joe Fleming, who lived on land owned by appellant's uncle. Fleming believed he might have a conflict of interest because he represented Frank Doherty, appellant's uncle, against Mike Doherty, appellant's father, in a dispute over the sale of a large amount of land from the family's estate. Fleming did not research the issue, but talked it over with other attorneys, and then decided to undertake the representation.

Fleming had not tried a criminal case to a jury in approximately 13 years. He had been out of the active practice of law for seven to ten years while he operated a carnival. At age 68, Fleming admits his memory is not as good as it used to be.

During pretrial investigation and trial preparation, Fleming did not ask appellant's first trial counsel, who had prepared an extensive file, for any information other than how many strikes he would have and how voir dire would be conducted. The hospitalization of appellant's investigator prevented a meeting in person, but Fleming did attempt to use the investigator's notes during his cross-examination of State's witness Lisa Jennings. Fleming spoke to one potential witness before the trial, but did not talk to any of the State's witnesses who testified at trial. He did not file any pretrial motions of his own, but adopted all of appellant's first counsel's motions. Fleming did not subpoena any witnesses for the guilt/innocence phase of the trial. Fleming failed to investigate another possible suspect (the husband of a woman the deceased was allegedly dating), and failed to interview an alibi witness and other fact witnesses. Fleming usually met with appellant in bars where Fleming would consume beer. Fleming told appellant his case was not serious. Appellant's first counsel described Fleming's attitude at recesses during trial as "jovial." At the end of the trial, Fleming laughed and said to appellant, "I got you life. I couldn't done you no worse."

During the hearing on motions to suppress evidence and to suppress statements by the accused, Fleming failed to request the report of Investigator David Mink for cross-examination purposes. Mink had filed an affidavit for evidentiary search warrants in the case and received search warrants from two different magistrates to search appellant's residence and truck.

Appellant allegedly had stated, while at the police station, that he did not kill the deceased, but that the gun found at his residence was the gun that shot the deceased.

During voir dire, Fleming asked one of appellant's sisters to help him with voir dire and jury selection. He had problems remembering the order of the jurors and "who was who." Fleming essentially relied on the State's voir dire of the jury. He expressed his confidence in the panel and his satisfaction with the court's and the State's examination of the venire. Fleming did not ask any individual juror a question. One of two deputy sheriffs on the venire equivocated on his ability to acquit, yet Fleming did not try to have him struck for cause; eventually, both deputy sheriffs were peremptorily struck. Fleming failed to object to a juror talking to one of the prosecutors. He did not ask who the juror was or ask any questions.

During the guilt/innocence stage of trial, Fleming failed to cross-examine many of the State's witnesses. He did not call any witnesses at the guilt/innocence phase even though appellant wanted to testify, and even though appellant's father had an explanation for appellant possessing a large amount of cash on the day of the shooting. Appellant had no prior convictions. Fleming asked one of appellant's sisters, a non-lawyer, whether he should put appellant on the witness stand, and she said no.

Fleming failed to object on numerous legal grounds, including hearsay, to questions by prosecutors, and to the admissibility of various exhibits.

The most harmful acts Fleming committed were making remarks to appellant in the presence of the jury. At one point, he asked appellant, "You didn't take all the money?" Additionally, while the medical examiner was describing certain head injuries sustained by the deceased, Fleming turned to appellant and asked, "What did you do, hit him over the head first?" This last remark was heard by the State's investigator sitting in the gallery 15–20 feet away. It was also heard by appellant's sister, sitting on the first row behind counsel table. Appellant maintains that the jury clearly was able to hear the remark.

During the punishment stage, Fleming objected, but failed to request an instruction to disregard or move for a mistrial, when the prosecutor asked appellant's father about an unadjudicated, extraneous offense allegedly committed by appellant. The State withdrew the question; Fleming did not pursue the matter further. The objection was overruled. The State directed essentially the same question to two reputation witnesses without objection. Then Fleming proved that the offense remained unadjudicated.

■ The standard of review for effectiveness of counsel is gauged by the totality of the representation of the accused. *Ex parte Duffy*, 607 S.W.2d 507, 516 n. 16 (Tex.Crim.App.1980). The constitutional right to counsel does not mean errorless counsel or counsel whose competency is judged by hindsight. Rather, the right to effective assistance of counsel means counsel reasonably likely to render reasonably effective assistance of counsel. *Ex parte Cruz*, 739 S.W.2d 53, 57–58 (Tex.Crim.App. 1987). An isolated failure to object to certain procedural mistakes or improper evidence does not necessarily constitute ineffective assistance of counsel. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim.App. 1984). Thus, to obtain a reversal because of ineffective assistance, appellant must show: (1) that counsel's performance was so deficient that counsel was not functioning as the counsel guaranteed by the sixth amendment; and (2) there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

■ The State concedes that appellant's trial counsel's performance fell below an objective standard of reasonableness, both at the guilt/innocence and punishment stages. The State agrees that this case should be reversed and remanded for a new trial on punishment; however, the State argues that appellant has not met the second prong of the *Strickland* test, that

Fleming's performance undermined confidence in the outcome of the trial at the guilt/innocence phase and, therefore, the conviction should be affirmed. The State cites the circumstantial evidence indicating appellant's guilt as proof that the result would have been the same if counsel had not erred. The State argues that despite counsel's ineptitude, nothing impacts upon the evidence evincing appellant's guilt.

The Supreme Court in *Strickland* stated:

[W]e believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case.... The result of a proceeding can be rendered unreliable, and hence, the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.... The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.... In every case the court should be concerned with whether ... the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

466 U.S. at 693–96, 104 S.Ct. at 2068–69.

Absent a showing that a defendant would have benefitted from the testimony, the decision not to call witnesses at either the guilt/innocence or punishment stages of a trial is not ineffective assistance. *King v. State*, 649 S.W.2d 42, 44 (Tex.Crim. App.1983). Here, appellant has made the showing that he would have probably benefitted from the testimony of his father and himself. Fleming did not call appellant at the guilt/innocence phase even though appellant wanted to testify. Appellant had no prior convictions to be impeached with. Fleming did not call appellant's father at the guilt/innocence phase, even though he had an explanation for appellant's possessing a large amount of money on the day of the shooting. The money was one piece of evidence cited by the State to prove appellant's guilt.

Additionally, a defendant may be deprived of effective assistance of counsel where the attorney fails to make an independent investigation of the facts of defendant's case. *Butler v. State*, 716 S.W.2d 48, 54–55 (Tex.Crim.App.1986) (failure to investigate possible witnesses and failure to call alibi witnesses was ineffective assistance of counsel, and was sufficient to undermine confidence in the outcome of the trial and warrant remanding the case for a new trial). Here, Fleming did not consult with appellant's first trial counsel, did not consult with appellant's investigator, did not talk to any of the State's witnesses prior to trial, did not subpoena any witnesses, and failed to investigate another possible suspect, an alibi witness, and fact witnesses. Counsel has a responsibility to seek out and interview potential witnesses, and failure to do so is ineffective where the result is that any viable defense available to the accused is not advanced. *Ex parte Lilly*, 656 S.W.2d 490, 493 (Tex.Crim.App. 1983). Fleming's omissions in this respect meet both tests of *Strickland* and warrant remanding the case for a new trial.

However, Fleming did not stop there. Aside from his omissions, Fleming himself made remarks prejudicial to appellant. Fleming's remarks to appellant, "You didn't take all the money?" and, "What did you do, hit him over the head first?" were heard 15–20 feet away. Fleming essentially admitted his client's guilt in the presence and hearing of the jury.

We find that, considering the totality of Fleming's representation of appellant, Fleming's performance did not meet the standard of reasonably effective assistance of counsel.

Appellant's first point of error is sustained. It is therefore unnecessary to consider appellant's other points of error.

The judgment is reversed, and the cause is remanded.