ACCEPTED
01-14-00121-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
9/15/2015 4:11:02 PM
CHRISTOPHER PRINE
CLERK

No. 01-14-00121-CR

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
9/15/2015 4:11:02 PM
CHRISTOPHER A. PRINE
Clerk

PAUL BRIONES
*Appellant*

v.

THE STATE OF TEXAS
*Appellee*

On Appeal from Cause Number 1268863
From the 178th District Court of Harris County, Texas

BRIEF FOR APPELLANT

ORAL ARGUMENT REQUESTED

ALEXANDER BUNIN
Chief Public Defender
Harris County, Texas

DAUCIE SCHINDLER
Assistant Public Defender
TBN 24013495
1201 Franklin, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278

Counsel for Appellant

1

## IDENTITY OF PARTIES AND COUNSEL

Appellant

Mr. Paul Briones
TDCJ No. 01925826
James Lynaugh Unit
1098 South Highway 2037
Fort Stockton, Texas 79735

Presiding Judge

The Honorable David Mendoza
178th District Court
1201 Franklin Street, 19th Floor
Houston, Texas 77002

Defense Counsel at Trial

Mr. John T. Floyd
Mr. Christopher Carlson
The Kirby Mansion
2000 Smith Street
Houston, Texas 77002
(713) 224-0101

Prosecutors at Trial

Mr. Connie Spence
Ms. Maritza Antu
*Assistant District Attorneys*
*Harris County*
1201 Franklin Street, 6th Floor
Houston, Texas 77002
(713) 755-6916

Defense Counsel at Motion for New Trial

Mr. Abraham Fisch

Appellant's Counsel

Daucie Schindler
*Assistant Public Defender*
Harris County
1201 Franklin Street, 13th Floor
Houston, Texas 77002
(713) 274-6717
Daucie.schindler@pdo.hctx.net

2

## TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL..................................................................................2

TABLE OF CONTENTS ..........................................................................................................3

INDEX OF AUTHORITIES......................................................................................................5

STATEMENT OF THE CASE ..................................................................................................7

ISSUE PRESENTED ................................................................................................................8

STATEMENT OF FACTS ........................................................................................................9

     The Trial......................................................................................................................9

     The Motion for New Trial.......................................................................................10

SUMMARY OF THE ARGUMENTS ....................................................................................16

ISSUE ONE ...........................................................................................................................17

ISSUE TWO ...........................................................................................................................17

ISSUE THREE ........................................................................................................................17

ARGUMENT ..........................................................................................................................17

     Standard of Review..................................................................................................17

     Deficient performance under the totality of the circumstances............................20

     Deficient Performance – failure to secure the attendance of critical witnesses ...........20

     Deficient Performance – failure to impeach complainant .............................................23

     Deficient Performance – failure to present mitigating evidence ...................................25

     Deficient Performance – failure to impeach the State's punishment evidence............26

     Prejudice....................................................................................................................27

CONCLUSION .......................................................................................................................34

PRAYER .................................................................................................................................35

CERTIFICATE OF COMPLIANCE ............................................................................36

CERTIFICATE OF SERVICE...................................................................................37

## INDEX OF AUTHORITIES

**Cases**

*Avery v. Prelesnik*, 548 F.3d 434 (6th Cir. 2008) ..................................................................29

*Bouchillon v. Collins*, 907 F.2d 589 (5th Cir. 1990) ..............................................................26

*Cannon v. State*, 252 S.W.3d 342 (Tex. Crim. App. 2008) ...............................................33

*Charles v. State*, 146 S.W.3d 204 (Tex. Crim. App. 2004) ...............................................19

*Coleman v. State*, 966 S.W.2d 525 (Tex. Crim. App.1998) ...............................................31

*Cuyler v. Sullivan*, 446 U.S. 335 (1980).................................................................................18

*Doherty v. State*, 781 S.W.2d 439 (Tex. App. -Houston [1st Dist.] 1998) .....................30

*Everage v. State*, 893 S.W.2d 219 (Tex. App. -Houston [1st Dist.] 1995) .............. 29, 32

*Ex parte Amezquita*, 223 S.W.3d 363 (Tex. Crim. App. 2006) ............................... 21, 23

*Ex parte Lilly*, 656 S.W.2d 490 (Tex. Crim. App. 1983) ...................................................31

*Ex parte Welborn*, 785 S.W.2d 391 (Tex. Crim. App. 1990) .............................................20

*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) .................................................20

*Hernandez v. State*, 988 S.W.2d 770 (Tex. Crim. App. 1999) ...........................................25

*Holden v. State*,  201 S.W.3d 761 (Tex. Crim. App. 2006) ...............................................20

*Jackson v. State*, 857 S.W.2d 678 (Tex. App. -Houston [14th Dist.] 1993, pet. ref'd) ........ 21, 23

*Lockhart v. Fretwell*, 506 U.S. 364 (1993)..............................................................................31

*Loyd v. Whitley*, 977 F.2d 149 (5th Cir. 1992)......................................................................21

*Martinez v. Ryan*, 132 S.Ct. 1309 (2012) ..............................................................................19

*Matthews v. Abramajtys*, 319 F.3d 780 (6th Cir. 2003)........................................................29

*Montgomery v. Peterson*, 846 F.2d 407 (7th Cir. 1988)..........................................................30

*Moore v. Johnson*, 194 F.3d 586 (5th Cir. 1999) ............................................................ 21, 24

*Nealy v. Cabana*, 764 F.2d 1173 (5th Cir. 1985) .................................................................29

*Powell v. Alabama,* 287 U.S. 45 (1932) ...............................................................................19

*Rivera v. State*, 123 S.W.3d 21 (Tex. App. -Houston [1st Dist.] 2003, pet. ref'd) ........................26

*Robertson v. State*, 187 S.W.3d 475 (Tex. Crim. App. 2006) ........................................................20

*Shanklin v. State*, 190 S.W.3d 154 (Tex. App. -Houston [1st Dist.] 2005, pet. dism'd) .............33

*State v. Thomas*, 768 S.W.2d 335 (Tex. App. -Houston [14th Dist.] 1989, no pet.) ....................32

*Strickland v. Washington,* 466 U.S. 688 (1984) ............................................................ *Passim*

*Toliver v. Pollard*, 688 F.3d 853 (7th Cir. 2012)..................................................................30

*United States v. Cronic*, 466 U.S. 648 (1984)............................................................... 18, 33

*U.S., ex rel, Cross v. DeRobertis*, 911 F.2d 1008 (7th Cir. 1987)......................................30

*Virgil v. Dretke*, 446 F.3d 598 (5th Cir. 2006) ..................................................................24

*Walker v. State*, 195 S.W.3d 250 (Tex. App. -San Antonio 2006, no pet.) ................................25

*Washington v. Texas*, 388 U.S. 14 (1967)............................................................................31

*Wiggins v. Smith*, 539 U.S. 510 (2003).......................................................................... 21, 25

*Wood v. State*, 260 S.W.3d 146 (Tex. App. -Houston [1st Dist.] 2008, no pet.) ........................25

## STATEMENT OF THE CASE

Mr. Briones was charged by indictment, on September 16, 2010, in the 176th District Court of Harris County, with the felony offense of indecency with a child in Cause Number 1268863.[1] (C.R. at 12). Mr. Briones was represented at trial by Mr. Abraham Fisch. (C.R. at 15). After a jury trial, Mr. Briones was found guilty of indecency with a child and assessed a ten (10) year probated sentence.[2] (C.R. at 15-20). On July 12, 2011, a Motion for New Trial was filed. (C.R. at 21-23). On July 20, 2011, the trial court granted the Motion for New Trial. (C.R. at 24). On October 17, 2011, the case was transferred to the 178th District Court of Harris County, Texas.[3] (C.R. at 31-32).

Mr. Briones again entered a plea of not guilty to the charge of indecency with a child in Cause Number 1268863.[4] (4 R.R. at 71-72). On January 7, 2014, he proceeded to trial by jury, represented at trial by Mr. John Floyd and Mr. Christopher Carlson. (C.R. at 146). On January 17, 2014, the jury found Mr. Briones guilty of indecency with a child and after trial on punishment, the jury sentenced him to twenty (20) years imprisonment in the Institutional Division of Texas Department of

---

[1] Mr. Briones was also charged in cause number 1268861 with aggravated sexual assault of a child.
[2] He was also found guilty of aggravated sexual assault of a child and sentenced by the jury to seven (7) years in the Institutional Division of the Texas Department of Criminal Justice
[3] The Motion for New Trial was granted as to cause number 1268861 as well and this case was also transferred to the 178th District Court.
[4] Mr. Briones entered a plea of not guilty to the charge of aggravated sexual assault of a child in cause number 1268861 as well.

Criminal Justice.[5]  (C.R. at 50, 61).   Mr. Briones filed timely Notice of Appeal and a Motion for New Trial was filed through attorney Abraham Fisch, on February 17, 2014.  (C.R. at 68, 72-90).

The hearing on the Motion for New Trial began on April 2, 2014.  Although the Motion for New Trial was overruled by operation of law on April 2, 2014, the hearing continued on April 10, 2014, April 11, 2014, and April 25, 2014.  The Motion for New Trial was denied by the trial court on May 2, 2014.  (C.R. at 148-149).  Mr. Briones requested abatement for an out of time hearing on the Motion for New Trial.  However, this Court, on June 30, 2015, denied the abatement, but granted Mr. Briones' request that the record of the untimely portion of the hearing and the trial court's ruling be considered to resolve matters related to this direct appeal.

ISSUES PRESENTED

ISSUE ONE

THE DISTRICT COURT ERRED IN FAILING TO GRANT A NEW TRIAL WHERE DEFENSE COUNSEL FAILED TO SECURE THE ATTENDANCE OF MULTIPLE WITNESSES IN VIOLATION OF MR. BRIONES' RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND UNDER ART. I, §§ 10 AND 19 OF THE TEXAS CONSTITUTION.
.

---

[5] The jury acquitted Mr. Briones of aggravated sexual assault in cause number 1268861 and the record of this charge was expunged on January 16, 2014.

## ISSUE TWO

THE DISTRICT COURT ERRED IN FAILING TO GRANT A NEW TRIAL WHERE DEFENSE COUNSEL FAILED TO IMPEACH THE COMPLAINING WITNESS WITH MULTIPLE PRIOR INCONSISTENT STATEMENTS IN VIOLATION OF MR. BRIONES' RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND UNDER ART. I, §§ 10 AND 19 OF THE TEXAS CONSTITUTION.

## ISSUE THREE

THE DISTRICT COURT ERRED IN FAILING TO GRANT A NEW TRIAL WHERE DEFENSE COUNSEL FAILED TO PRESENT MITIGATING EVIDENCE AT PUNISHMENT IN VIOLATION OF MR. BRIONES' RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND UNDER ART. I, §§ 10 AND 19 OF THE TEXAS CONSTITUTION.

## STATEMENT OF FACTS

### THE TRIAL

The evidence at trial established that sometime around July, 2007, Mr. Briones' niece[6], L.D., told her aunt, Katrina Pena, that several years prior, in approximately December, 2004, she had been inappropriately touched by her uncle as she lay on the floor of his living room surrounded by her sister and cousins who were asleep at the time. (4 R.R. at 82-100). There were no other allegations of abuse made by L.D. or by any of the other children. There was no action taken by either L.D. or her aunt until about six months later when Ms. Pena informed L.D.'s mother of her allegation. (4 R.R. at 108-116). Although her parents unsuccessfully attempted to obtain medical

---

[6] Because the complainant was a minor at the time of the alleged offense, for purposes of this appeal, she will be referred to as L.D.

9

help for L.D., the police were not contacted by the family until May, 15, 2010; nearly three years after L.D.'s initial outcry to her aunt. (4R.R. at 175-199). Mr. Briones was acquitted of the charge of aggravated sexual assault of a child, but convicted of indecency and sentenced to twenty (20) years confinement in the Institutional Division of the Texas Department of Criminal Justice. (9 R.R. at 8, 10 R.R. at 190).

## THE MOTION FOR NEW TRIAL

Through a new attorney, Mr. Abraham Fisch, a claim of ineffective assistance of counsel was raised in a Motion for New Trial. (C.R. at 72). The Motion for New Trial was denied by the trial court on May 2, 2014. (C.R. at 148-149). At the hearing on the motion, Mr. Floyd testified that he had been hired by Mr. Briones to represent him against the allegations of indecency with a child and aggravated sexual assault of a child. Mr. Briones was convicted of indecency and sentenced to twenty (20) years in prison. He was acquitted of aggravated sexual assault of a child. (13 R.R. at 17).

### MR. FLOYD FAILED TO CHALLENGE THE CREDIBILITY OF THE COMPLAINANT

Mr. Floyd testified that he was aware of the fact that Mr. Briones had previously been convicted by a jury on both counts, but those convictions were reversed by the trial court when it was discovered that the jury considered an exhibit that had not been admitted into evidence. As part of his trial preparation, Mr. Floyd reviewed the transcript from the previous trial. (13 R.R. at 19-30). He considered the testimony of the complainant about what allegedly happened on the night in question to be the heart of the case. Despite the significance of her testimony about that night,

Mr. Floyd did not use her prior inconsistent statements at the previous trial to impeach her credibility because he either did not recognize the inconsistencies or he thought them immaterial.[7] (13 R.R. at 57-64). Mr. Floyd's cross-examination consisted nearly entirely of open ended questions similar to those already covered during the State's direct. (13 R.R. at 93-94; 6 R.R. at 127-233). According to Mr. Floyd it was not his strategy to conduct "cross-examination with a transcript in [his] hand" (13 R.R. at 98) and the inconsistent statements of the complainant "didn't mean anything to our defense." (14 R.R. at 24).

Although L.D. testified to being depressed and angry Mr. Floyd had obtained hundreds of posts on her Facebook page contradicting her testimony regarding her mental state, and in one instance posting that "[i]f you upset me, you better get out of my way," but Mr. Floyd did not impeach L.D. with this information. (13 R.R. at 136-137). Mr. Briones' step-daughter, Ashley, and his son, Jonathon, spent a lot of time around L.D. and were available to testify as to her reputation for truthfulness. Ashley would have testified that L.D. was a manipulative liar and a troublemaker.

L.D. testified that Ashley and Jonathon were sleeping on the floor next to her when the alleged sexual misconduct occurred. Ashley and Jonathon would have

---

[7] For example, L.D. testified at trial in 2011 that her uncle came home and went to his bed room before going into the kitchen, but in 2014, L.D. testified that her uncle came home and went straight into the kitchen. (13 R.R. at 89-90). She testified at trial in 2011 that she was able to see her uncle in the kitchen because of the proximity and the light from the refrigerator, but in 2014, she testified that she could not see, but only hear, her uncle in the kitchen. (13 R.R. at 91-92). She testified in 2014 that her uncle adjusted the blankets before making a sandwich in the kitchen, but in 2011 she testified that he adjusted the blankets after leaving the kitchen. (13 R.R. at 95-97). In 2011, L.D. testified that after adjusting the blankets, Mr. Briones returned to the kitchen for five to ten minutes, but in 2014 she testified that he went from the kitchen to his bedroom. (13 R.R. at 99).

testified that they did not have any recollection of the events in question, but Mr. Floyd did not provide this testimony at trial for the jury's consideration. (13 R.R. at 138-142). Mr. Floyd did not provide the testimony of the complainant's sister, Kayla, (although she had testified at the trial in 2011, was subpoenaed, and available to testify at the trial in 2014) because "they were still interviewing her" and he was "unsure about what her testimony might be, up until the last day." (13 R.R. at 149).

### MR. FLOYD FAILED TO PROVIDE CRUCIAL EVIDENCE AT TRIAL

Although he acknowledge the significance of eye witness testimony, Mr. Floyd did not call any of the available eye witnesses, including Mr. Briones' children and his wife, who would have been able to refute the complainant's testimony that on the night in question, she, her sister, and her cousins were sleeping on the floor, and that her aunt, Joanna Briones, was asleep when her uncle got home. Mr. Floyd did not call them because they are members of Mr. Briones' immediate family and he was concerned about possible harmful testimony. (13 R.R. at 65-81). Mr. Floyd acknowledged that he could have approached the bench and requested a hearing to determine the admissibility of the testimony he deemed harmful from these witnesses, but he didn't even attempt to do so. (14 R.R. at 175).

Although he testified that he had reviewed the medical records in this case and agreed that substance abuse by the complainant is important, Mr. Floyd did not call the psychologist who ultimately treated L.D. even though L.D. admitted during her therapy sessions to having a very tumultuous relationship with her father and that she

12

was abusing alcohol, marijuana, and pain pills during the time she decided to make her initial outcry to her aunt. (13 R.R. at 105-108). In addition, a nurse practitioner treated L.D. after the psychologist. discharged her from therapy for not "being open." (13 R.R. at 171). L.D. had been diagnosed with and was being treated for bipolar disorder, but Mr. Floyd did not present this evidence because, although he agreed that the evidence would have benefitted Mr. Briones' case, he did not know how to present it without it "backfiring and hurting the client." (13 R.R. at 109-116).

In preparation for trial, Mr. Floyd obtained the expert assistance of Dr. Aaron Pierce who was available to testify at trial. Mr. Floyd did not recall giving Dr. Pierce any of L.D.'s medical records or previous trial testimony to review, but he thought they had discussed the records with him and determined that his testimony would not be helpful. (13 R.R. at 129-131). In addition, Mr. Floyd hired an investigator who questioned the family in this case and determined that L.D. loved spending time at the Briones' house and continued to go there without complaint for years following the alleged conduct. The family contradicted L.D.'s testimony regarding the basic functioning of the Briones' household indicating that Joanna Briones always waited up for her husband to come home and would not have been asleep at the time in question. Mrs. Briones also either left food out for her husband him or told him to pick something up on his way home, but he did not ever prepare food when he got home late from work. (13 R.R. at 152-156).

The investigator also uncovered evidence that L.D. had asked Paul and Joanna Briones if she could live with them shortly before the initial outcry occurred and they had informed her that she could not because she was too much of a problem child. Despite having this evidence, Mr. Floyd argued in closing that he had "no idea why she's making this story up." (14 R.R. at 127). The reason Mr. Floyd offered for failing to utilize this information was that he "chose not to call any witness in [Mr. Briones'] defense." (13 R.R. at 163).

L.D.'s parents, Lucinda and Karl, first reported their daughter's allegations to the Houston Police Department nearly three years after L.D.'s initial outcry. The HPD officer that they reported the incident to was Officer Munoz. This initial report contained several inconsistencies as compared to the trial testimony including an allegation of penile penetration. Mr. Floyd issued a subpoena for Officer Munoz and he was available to testify at trial. Although Lucinda denied the false statements in the first report to police at trial, Mr. Floyd did not call Officer Munoz to impeach her testimony because he believed that Officer Munoz was "extremely interested in helping the State in this case" and he would have been "difficult to control." (13 R.R. at 183-200).

**MR. FLOYD FAILED TO PRESENT MITIGATING EVIDENCE AT PUNISHMENT**

Ultimately, Mr. Briones was found guilty and sentenced to twenty years in prison as compared to the ten year probated sentence he received at the previous trial in this case. (13 R.R. at 208). At punishment, the State called numerous witnesses,

14

but Mr. Floyd called only one witness, Mr. Briones' sister: Oralia Schmidt, on Mr. Briones' behalf. Although he acknowledged that it was mitigating, Mr. Floyd did not offer evidence from Mr. Briones' previous employers, including Judge Jefferson, Judge McSpadden, and Judge Cagle, who provided favorable character evidence on Mr. Briones' behalf at the previous trial. (13 R.R. at 216-217; Defendant's Exhibits 17-20). According to Mr. Floyd, he did not provide the jury with this mitigating evidence because "recommendations from work saying he did a good job just really didn't mean a lot to [him]." (14 R.R. at 179).

In addition, during the cross-examination of the one character witness that he called on Mr. Briones' behalf, Mr. Floyd failed to object when the State repeatedly cross examined Ms. Schmidt with evidence not before the jury at that time. (13 R.R. at 220-223). At one point during the cross of Ms. Schmidt, the State improperly alleged that Mr. Briones failed to pay child support for his son from a previous relationship, but Mr. Floyd failed to correct the jury's impression on this issue. (13 R.R. at 223-225; See Defendant's Exhibit 16). Mr. Floyd admitted that it would have been easy to obtain certified government documents establishing both that Mr. Briones had paid child support and also that Mr. Briones had an honorable military record, but Mr. Floyd "didn't do that." (14 R.R. 1t 169).

At punishment, the State called Dr. Lawrence Thompson who would testify, without objection, that "[t]he only way to be certain a sex offender is not going to reoffend, is to incarcerate them." (16 R.R. at 134-135). Although Mr. Floyd had an

15

expert, Dr. Pierce, who was available and could have "definitely" challenged Dr. Thompson's testimony, he did not call him because he did not "find that there was anything from Thompson that was so damaging." (16 R.R. at 136).

## SUMMARY OF THE ARGUMENTS

The trial court abused its discretion in denying Mr. Briones' Motion for New Trial which alleged that his trial attorneys rendered ineffective assistance of counsel. In failing to secure the testimony of crucial, exculpatory witnesses for Mr. Briones who would have offered material facts and impeached the testimony of the complainant, trial counsel's conduct was objectively deficient and prejudiced the defense. Trial counsel's failure to uncover and utilize readily available evidence to impeach the credibility of the complainant, where her credibility was critical cannot be considered strategic and was objectively deficient performance. In addition, at punishment, trial counsel failed to present a plethora of mitigating evidence that was readily available. The harm caused by the lack of investigation into and presentation of mitigation evidence is apparent as the jury assessed the maximum punishment allowed for a second degree felony. As a result, Mr. Briones' constitutional right to present a defense was eviscerated. The trial court's findings that counsel used sound trial strategy are not entitled to deference because the record supports a finding that counsel failed to understand and present crucial evidence in support of the defense.

16

**ISSUE ONE**

THE DISTRICT COURT ERRED IN FAILING TO GRANT A NEW TRIAL WHERE DEFENSE COUNSEL FAILED TO SECURE THE ATTENDANCE OF MULTIPLE WITNESSES IN VIOLATION OF MR. BRIONES' RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND UNDER ART. I, §§ 10 AND 19 OF THE TEXAS CONSTITUTION.
.

**ISSUE TWO**

THE DISTRICT COURT ERRED IN FAILING TO GRANT A NEW TRIAL WHERE DEFENSE COUNSEL FAILED TO IMPEACH THE COMPLAINING WITNESS WITH MULTIPLE PRIOR INCONSISTENT STATEMENTS IN VIOLATION OF MR. BRIONES' RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND UNDER ART. I, §§ 10 AND 19 OF THE TEXAS CONSTITUTION.

**ISSUE THREE**

THE DISTRICT COURT ERRED IN FAILING TO GRANT A NEW TRIAL WHERE DEFENSE COUNSEL FAILED TO PRESENT MITIGATING EVIDENCE AT PUNISHMENT IN VIOLATION OF MR. BRIONES' RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND UNDER ART. I, §§ 10 AND 19 OF THE TEXAS CONSTITUTION.

**ARGUMENT**

***Standard of Review***

In the seminal case of *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court granted certiorari to determine what standards are to be applied in adjudicating claims of ineffective assistance of counsel. The Court reaffirmed "that the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Id.* at 684. Although the Due Process Clauses

17

guarantee "a fair trial," it is the Sixth Amendment which "defines the basic elements of a fair trial…" *Id.* at 685. As Justice O'Connor reasoned,

> A fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceedings. *The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution.'*
>
> \*\*\*
>
> *The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.* (Emphasis added).

*Id.* In the final analysis, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Id.* at 686. "Unless a defendant charged with a serious offense has counsel able to invoke the procedural and substantive safeguards that distinguish our system of justice, a serious risk of injustice infects the trial itself." *Cuyler v. Sullivan*, 446 U.S. 335, 343 (1980). Absent competent counsel, ready and able to subject the prosecution's case to the "crucible of meaningful adversarial testing," there can be no guarantee that the adversarial system will function properly to produce just and reliable results. *United States v. Cronic*, 466 U.S. 648, 656 (1984). "Thus, the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Cronic*, at 658.

18

As the Supreme Court reaffirmed in *Martinez v. Ryan*, 132 S.Ct. 1309, 1317 (2012):

> Defense counsel tests the prosecution's case to ensure that the proceedings serve the function of adjudicating guilt or innocence, while protecting the rights of the person charged. *See, e.g., Powell v. Alabama*, 287 U.S. 45, 68-69 (1932)("[The defendant] requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence").

The Court set out a two component standard with respect to claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, at 687.

Here, Mr. Briones raised his allegations of ineffective assistance of counsel through a motion for new trial. Therefore, this court must determine whether the trial court abused its discretion in denying the motion. A trial court abuses its discretion if it acts without reference to any guiding principles or in an arbitrary or unreasonable manner. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). The abuse of discretion standard may not be used to insulate questions of law from plenary review on appeal. After all, a deferential standard with respect to a trial

19

court's denial of a motion for new trial is only applicable to "a trial court's determination of historical facts." *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). Although deference should be afforded to a trial court's underlying factual determinations, the objective reasonableness of the challenged conduct is a question of law reviewed de novo. *Strickland*, 466 U.S. at 698; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

### Deficient Performance under the totality of the circumstances

To establish the first prong of *Strickland*, Mr. Briones must show by a preponderance of the evidence that trial counsel's performance fell below the objective standards of prevailing professional norms. Counsel's performance is judged by "the totality of the representation." The deficiencies in counsel's representation of Mr. Briones permeated the proceedings. A multitude of examples are provided below. The many instances of professional neglect and mistreatment work to paint a picture of an extremely unprofessional course of representation in a very serious case. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

### Deficient Performance – failure to secure the attendance of critical witnesses

Trial counsel has a duty to make an independent investigation of the facts of a case. *Ex parte Welborn*, 785 S.W.2d 391, 395 (Tex. Crim. App. 1990). The United States Supreme Court has explained that "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually

20

unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)(quoting *Strickland*, 466 U.S. at 690-691). Because there is a "crucial distinction between strategic judgments and plain omissions," *Loyd v. Whitley*, 977 F.2d 149, 158 (5th Cir. 1992), courts are "not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all." *Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999).

Mr. Floyd had a constitutional duty to present "available evidence and arguments" to support Mr. Briones' defense. *Jackson v. State*, 857 S.W.2d 678, 683 (Tex. App. –Houston [14[th] Dist.] 1993, pet. ref'd). He was obligated to conduct a reasonable investigation in an effort to present the most persuasive case that he could. This duty encompasses presenting evidence to demonstrate Mr. Briones' innocence, undermine the prosecution's case, or raise a reasonable doubt as to guilt. *See Ex parte Amezquita*, 223 S.W.3d 363, 368 (Tex. Crim. App. 2006).

Mr. Floyd had available at trial, the testimony of several members of Mr. Briones' family who would have been able to contradict many of the allegations of the complainant. Joanna Briones would have been able to offer testimony that contradicted the complainant's assertion that her aunt was asleep when Mr. Briones

21

returned home from work on the night in question. She also would have been able to offer her opinion as to her niece's reputation for truthfulness.

Most importantly, Mrs. Briones would have offered testimony that she and Mr. Briones informed the complainant a few days before her initial outcry that she could not move in with them because she was too problematic a child at that time. Mr. Floyd would argue to the jury in summation that he did not know why L.D. would make up this story when the answer to that question was at his fingertips, but he failed to present the evidence of the answer to the jury. The State added fuel to the already raging fire when they asked the jury during summation, "Why? Good God, why would she want to make this up?" (8 R.R. at 46).

L.D.'s sister and two cousins were alleged to have been present and in the room on the night in question, but none of them had any recollection of the events as alleged by L.D. and none of them had ever experienced inappropriate behavior by Mr. Briones. L.D.'s cousin, Ashley, was available to offer her opinion that L.D. was a manipulative liar and troublemaker who often lied to get her way or so others would pity her. Ashley was also able to establish L.D.'s volatile relationship with her own parents and her sexual proclivity that materialized right around the time of her initial outcry, but Mr. Floyd did not call her to the stand. (13 R.R. at 138-141; Defendant's Exhibit 12). His explanation that he feared harmful testimony from the witnesses is not reasonable in light of his acknowledgment that he could have approached the

22

bench and requested a hearing to determine the admissibility of any testimony he deemed harmful, but he didn't even attempt to do so. (14 R.R. at 175).

Although he testified that he had reviewed the medical records in this case and agreed that substance abuse by the complainant is important, Mr. Floyd did not call the psychologist who ultimately treated L.D. even though L.D. admitted during her therapy sessions to having a very tumultuous relationship with her father and that she was abusing alcohol, marijuana, and pain pills during the time she decided to make her initial outcry to her aunt. (13 R.R. at 105-108). In addition, the nurse practitioner who treated L.D. after the psychologist discharged her from therapy for not "being open" and whose primary role was to assist L.D. with the treatment of bipolar disorder was available to testify, but Mr. Floyd did not call her either. Although he agreed that the evidence would have benefitted Mr. Briones' case he did not know how to present it without it "backfiring and hurting the client." (13 R.R. at 109-116).

**Deficient Performance – failure to impeach the complainant**

Trial counsel had a constitutional duty to present "available evidence and arguments" to support Mr. Briones' defense. *Jackson*, 857 S.W.2d at 683. This duty encompasses presenting evidence to demonstrate Mr. Briones' innocence, undermine the prosecution's case, or raise a reasonable doubt as to guilt. *See Ex parte Amezquita*, 223 S.W.3d at 368. Trial counsel's professed reasons for failing to use the previous inconsistent statements of the complaining witness makes clear the unavailing nature of his claim of trial strategy. Trial counsel's explanation for not impeaching L.D. with

23

her previous inconsistent statements – that he did not want to make the jury mad – is an after-the-fact excuse unsupported by either logic or reason. *See Virgil v. Dretke*, 446 F.3d 598, 611 (5th Cir. 2006)("When trial counsel presents an [explanation] attempting to justify his performance at trial for facially unexplainable conduct, the justifications not evident on the record and presented for the first time in response to a petition for habeas corpus…have little value.").

Trial counsel's assertion that prior inconsistent statements of the complainant were immaterial is not supported by the record. The complainant was the most critical witness for the State and their entire case hinged on her credibility; indeed the State emphasized the importance of the credibility of the complainant repeatedly during summation going so far as to argue that "if you believe what [L.D.] says, that is evidence and Paul Briones is guilty" and "it all goes down to credibility…[d]o you believe [L.D.]?" (8 R.R. at 46). Trial counsel's cross-examination of L.D. did more harm than good as it created the false impression that her assertion has been consistent, rather than expose her as untruthful. *See Moore v. Johnson*, 194 F.3d at 611-612 (Strickland does not require deference to claim of trial strategy "where conduct was not motivated by 'any strategic purpose that could conceivably have yielded any benefit to the defense.'").

The fact that trial counsel did not comprehend the significance of the critical impeachment evidence –which eviscerates his claimed strategic reason for not eliciting it – is fortified by his failure to mention her credibility issues even once during

24

summation. *See Walker v. State*, 195 S.W.3d 250, 260 (Tex. App. –San Antonio 2006, no pet.)(rejecting claim of trial strategy where counsel "failed even to follow his own flawed strategy."). The State however, made L.D.'s credibility the end all be all of the case when they argued that "it all goes down to credibility." (8 R.R. at 46). Therefore, this Court should not defer to the trial court's flawed finding that trial counsel made a sound strategic decision not to present L.D.'s prior inconsistent statements. *See Wood v. State*, 260 S.W.3d 146, 148 (Tex. App. –Houston [1st dist.] 2008, no pet.)("We agree with appellant that his counsel could have no reasoning or strategy" that explains his challenged conduct).

**Deficient Performance – failure to present mitigating evidence**

Although the Strickland standard was not always applied in Texas to claims of ineffective assistance of counsel at the punishment phase of a noncapital trial, the Court of Criminal Appeals has unambiguously adopted that standard for such claims. *Hernandez v. State*, 988 S.W.2d 770 (Tex. Crim. App. 1999). Thus, the same two-prongs of deficient performance and prejudice laid out in Strickland are applicable to punishment proceedings. *Wiggins v. Smith*, 539 U.S. at 510.

Mr. Briones was found guilty and sentenced to twenty years in prison as compared to the ten year probated sentence he received at the previous trial in this case. (13 R.R. at 208). At punishment, the State called numerous witnesses, but Mr. Floyd called only one witness, Mr. Briones' sister: Oralia Schmidt, on Mr. Briones' behalf. Although he acknowledged that it was mitigating, Mr. Floyd did not offer

25

evidence from Mr. Briones' previous employers, including Judge Jefferson, Judge McSpadden, and Judge Cagle, who provided favorable character evidence on Mr. Briones' behalf at the previous trial, nor did he offer evidence of Mr. Briones' honorable military service. (13 R.R. at 216-217). According to Mr. Floyd, he did not provide the jury with this mitigating evidence because "recommendations from work saying he did a good job just really didn't mean a lot to [him]" (14 R.R. at 179) and although it would have been easy to demonstrate Mr. Briones' military service, he just "didn't do that." (14 R.R. at 169).

No reasonable strategy can be inferred from the failure to present this mitigating evidence to the jury. A failure to uncover and present mitigating evidence cannot be justified as a tactical decision when defense counsel has "not 'fulfilled their obligation to conduct a thorough investigation of the defendant's background.'" *Rivera v. State*, 123 S.W.3d 21, 31 (Tex. App. –Houston [1st Dist.] 2003, pet. ref'd); *Bouchillon v. Collins*, 907 F.2d 589, 595 (5th Cir. 1990)(counsel failed to present defendant's medical history even though counsel was informed that defendant had been institutionalized on several occasions in the past).

**Deficient Performance – failure to impeach the State's punishment evidence**.

In addition, during the cross-examination of the one character witness that he called on Mr. Briones' behalf at punishment, the State improperly alleged that Mr. Briones failed to pay child support for his son from a previous relationship, but Mr.

26

Floyd failed to correct the jury's impression on this issue. (13 R.R. at 223-225; See Defendant's Exhibit 16). Mr. Floyd admitted that it would have been easy to obtain certified government documents establishing both that Mr. Briones had paid child support, but Mr. Floyd "didn't do that." (14 R.R. 1t 169).

The State relied on the testimony of Dr. Lawrence Thompson who would testify at punishment, without objection, that "[t]he only way to be certain a sex offender is not going to reoffend, is to incarcerate them." (16 R.R. at 134-135). Although Mr. Floyd had an expert, Dr. Pierce, who was available and could have "definitely" challenged Dr. Thompson's testimony, he did not call him because he did not "find that there was anything from Thompson that was so damaging." (16 R.R. at 136). Even looking with deference to trial counsel's perspective at the time, his misunderstanding of the magnitude of Dr. Thompson's testimony is objectively unreasonable.

**Prejudice**

With respect to the prejudice showing, the Court rejected application of an "outcome determinative" test stressing that "we believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland,* 466 U.S. at 693. As the Court reasoned, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, *even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.*" *Id.* at 694. What the defendant must show "is that there is a reasonable

27

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability sufficient to undermine confidence in the outcome." *Id.*

The "totality of the evidence" must be considered in making the prejudice determination bearing in mind that

> [s]ome errors will have a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.
>
> ***
>
> [A] court should keep in mind that the principles we have stated do not establish mechanical rules. Although those principles should guide the process of decision, *the ultimate focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. In every case the court should be concerned with whether, despite a strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.* (Emphasis added).

*Id.* at 696. Although "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," that presumption applies only to the question of whether counsel's performance was deficient. *Id.* at 690.

In his concurring opinion, Mr. Justice Brennan stressed that "the prejudice standard announced today does not erect an insurmountable obstacle to meritorious claims, but rather simply requires courts carefully to examine records in light of both

28

the nature and seriousness of counsel's errors and their effect in the particular circumstances of the case." *Id.* at 703. The Fifth Circuit has held

> [a]lthough 'the defendant [must] affirmatively prove prejudice,' there are no easily applied or specific guidelines for us to use in determining whether the inadequate performance of the defendant's counsel harmed his case 'enough' to constitute a violation of the sixth amendment. The Supreme Court in *Strickland* recognizes this problem, and, rather than develop mechanical rules, the Court directed us to place our 'ultimate focus of inquiry … on the fundamental fairness of the proceeding whose result is being challenged.'

*Nealy v. Cabana*, 764 F.2d 1173, 1179 (5th Cir. 1985).

In applying the "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different" test, courts have stressed that "[t]his standard does not require that defendant be found not guilty or assessed a lenient punishment absent counsel's errors." *Everage v. State*, 893 S.W.2d 219, 222 (Tex. App. –Houston [1st Dist.] 1995). *See Matthews v. Abramajtys*, 319 F.3d 780, 790 (6th Cir. 2003)("Of course, a 'reasonable probability' does not mean a certainty, or even a preponderant likelihood … of a different outcome, nor, even more, that no rational juror could constitutionally find Matthews guilty." *Id.*; and *Avery v. Prelesnik*, 548 F.3d 434, 439 (6th Cir. 2008), cert. denied, 558 U.S. 932 (2009)("We do not ask whether Avery was ultimately innocent, but, rather, whether he was deprived [of] a reasonable shot of acquittal. Here the jury was deprived of the right to hear [potential alibi] testimony that could have supplied such 'reasonable doubt.'"). Moreover, "the components of the *Strickland* analysis cannot be treated as hermetically sealed containers. [A court's] inquiry with respect to one component will

therefore often shed a valuable cross-light upon [its] inquiry with respect to the other." *U.S., ex rel, Cross v. DeRobertis*, 911 F.2d 1008, 1013 (7th Cir. 1987).

In *Toliver v. Pollard*, 688 F.3d 853, 857 (7th Cir. 2012), the Court held by failing to call "the only two witnesses that would have corroborated his theory of the defense" and impeached the testimony of a State's witness, defense counsel's performance was prejudicial to the defendant because it "'would have enhanced significantly the chances of the jury's accepting Mr. Toliver's characterization of the facts, thereby affording Mr. Toliver a reasonable probability of a different result at trial.'" *See also Montgomery v. Peterson*, 846 F.2d 407, 415 (7th Cir. 1988)(Prejudice found where defense failed to present the testimony of an exculpatory witness who would have both "contradicted the state's chief witness" and corroborated the defendant's account of the facts and, "[a]s such, it did not merely raise doubts about the petitioner's guilt; if believed by the jury, it would have directly exonerated him of the crime");(*Nealy v. Cabana*, 764 F.2d at 1180)("Given that the missing witness directly contradicted Ewing's testimony and supports Nealy's theory of the case, Nealy has met his 'burden of showing that the decision reached would reasonably likely have been different absent the errors.'" The Court concluded that "[e]ven though defense counsel's errors cannot be shown by a preponderance of the evidence to have determined the outcome of Nealy's trial, they were of sufficient gravity to undermine the fairness of the proceeding to suggest that a new trial is necessary to ensure that Nealy receives a fair trial.") *Id.*; and (*Doherty v. State*, 781 S.W.2d 439, 442 (Tex. App. –

30

Houston [1st Dist.] 1998), citing, *Ex parte Lilly*, 656 S.W.2d 490, 493 (Tex. Crim. App. 1983, pet. ref'd)(Ineffective assistance is established with respect to defense counsel not presenting favorable witnesses at trial "where the result is that any viable defense available to the accused is not advanced.").

It logically follows that in factual scenarios where defense counsel's deficient performance results in the failure to secure at trial the testimony of crucial witnesses for the defense, especially when the evidence is not otherwise overwhelming, prejudice will nearly invariably be found because such abdication of duty by counsel implicates the substantive constitutional right to put on a defense. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)(Deprivation of substantive or procedural right to which defendant is entitled affects reliability and fairness of the proceeding whish can result in ineffective assistance of counsel.). The appellant enjoys "a Sixth Amendment right to present a defense and present his version of the facts." *Coleman v. State*, 966 S.W.2d 525, 527-528 (Tex. Crim. App. 1998). In *Washington v. Texas*, 388 U.S. 14, 19 (1967), the Supreme Court held:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms a right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

In the case *sub judice*, defense counsel's failure to secure critically important testimony for presentation at trial and failure to impeach the complainant with a

multitude of prior inconsistent statements fatally impacted Mr. Briones' "right to present a defense and present his version of the facts;" it also thwarted his right to challenge the testimony of the prosecution's most crucial witness by being unable to present highly favorable and material testimony that contradicted the complainant's version of events. The sole defensive theory at trial was that the complainant's story lacked credibility so the decision not to challenge the credibility of the complainant cannot be justified as strategy and resulted in the complete failure to advance the one defensive theory available to Mr. Briones.

An attorney has a professional duty to present all available testimony in support of the client's defense. *See State v. Thomas*, 768 S.W.2d 335, 336 (Tex. App. –Houston [14th Dist.] 1989, no pet.). Mr. Floyd basically conceded his ineffective representation when he admitted that the answer to the seminal question of why L.D. would make up this story would have been reasonably deduced from the evidence had he presented the available evidence that: (1) L.D. wanted to live with Mr. and Mrs. Briones not a month prior to her initial outcry, but they turned her down because she was a problem child; (2) L.D. had been diagnosed with bipolar disorder; (3) L.D. was abusing alcohol, marijuana, and pain pills at the time of the outcry; (4) and L.D. wanted attention from her father that she was not getting. (14 R.R. at 129).

Courts are not bashful about reversing cases for ineffective assistance due to the failure to present exculpatory witnesses. In *Everage v. State*, 893 S.W.2d 219 (Tex. App. –Houston [1st Dist.] 1995, pet. ref'd), this Court held that it was ineffective

32

assistance to fail to call a potentially exculpatory witness. Surely, instances of deficient performance of such magnitude and significance result in "evidence (not being) subject to adversarial testing," and irrefutably establishes that counsel did not "play [the] role that is critical to the ability of the adversarial system to produce just results," and "necessary to ensure that the trial is fair." *Strickland*, 466 U.S. at 685. Here, Mr. Floyd entirely failed to subject the State's case to any meaningful adversarial testing so Mr. Briones suffered a constructive denial of the assistance of counsel altogether and, because it is so likely, prejudice should be presumed. *See Cronic*, 466 U.S. at 659; *Cannon v. State*, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008).

With regard to the punishment proceeding, there is a reasonable probability that Mr. Briones sentence would have been less severe had the available mitigation evidence been presented and the State's witnesses properly challenged. For practical purposes, no mitigation case was presented by the defense and Mr. Briones was given the maximum allowable sentence. Although there is no definitive way to determine whether the jury would have delivered a lesser sentence had the mitigation evidence been presented, when counsel deprives a defendant of the opportunity to bring out any mitigating factors when there are witnesses available to present a mitigation case, harm may be found. *See Shanklin v. State*, 190 S.W.3d 154, 165-66 (Tex. App. – Houston [1st dist.] 2005, pet. dism'd)("We conclude that appellant has demonstrated prejudice in this case, even though we cannot say for certain that appellant's character witnesses would have favorably influenced the jury's assessment of punishment.").

33

Considering that when the mitigating evidence was provided to the jury at his first trial, Mr. Briones received a ten year probated sentence, it is again so likely, that prejudice should be presumed.

## CONCLUSION

Based on the totality of the circumstances, "the fundamental fairness of the proceedings whose result is being challenged" is so undermined by the inept conduct of trial counsel that it establishes a "breakdown in the adversarial process that our system counts on to produce just results." *Strickland, supra*, at 696. There is certainly a reasonable probability that had Mr. Briones been represented by effective trial counsel, he would not have been found guilty or he would not have been assessed the maximum punishment.

## PRAYER

This court must reverse the conviction and remand for a new trial.

Respectfully submitted,

Alexander Bunin
Chief Public Defender

*/s/ Daucie Schindler*
Daucie Schindler
State Bar No. 24013495
Public Defender's Office
Harris County, Texas
Assistant Public Defender
1201 Franklin, 13th Floor
Houston, Texas 77002
Daucie.Schindler@pdo.hctx.net
Tel: 713-274-6717
Fax: 713-368-9278

35

## CERTIFICATE OF COMPLIANCE

Pursuant to proposed Rule 9.4(i)(3), undersigned counsel certifies that this brief complies with the type-volume limitations of *Tex. R. App. Proc. 9.4(e)(i)*.

1.      Exclusive of the portions exempted by *Tex. R. App. Proc. 9.4 (i)(1)*, this brief contains 7,371 words printed in a proportionally spaced typeface.

2.      This brief is printed in a proportionally spaced, serif typeface using Garamond 14 point font in text and Garamond 13 point font in footnotes produced by Microsoft Word Software.

3.      Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in *Tex. R. App. Proc. 9.4(j)*, may result in the Court's striking this brief and imposing sanctions against the person who signed it.

*/s/ Daucie Schindler*
DAUCIE SCHINDLER

**CERTIFICATE OF SERVICE**

I certify that on the 15th day of September, 2015, a copy of the foregoing instrument has been electronically served upon the Appellate Division of the Harris County District Attorney's Office.

/s/ Daucie Schindler
DAUCIE SCHINDLER