**Clarence Ray EVERAGE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–92–00903–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 2, 1995.

Rehearing Overruled March 2, 1995.

Janet Morr Ow, Houston, for appellant.

John B. Holmes, Jr. and Karen Clark, Houston, for appellee.

Before ANDELL, HUTSON–DUNN and PRICE [1], JJ.

## OPINION

PRICE, Justice (Assigned).

A jury found appellant, Clarence Ray Everage, guilty of felony theft of property with a value of over $750 and less than $20,000. After finding two enhancement paragraphs true, the jury assessed appellant's punishment at 75–years confinement. In three points of error, appellant asserts (1) ineffec-

tive assistance of counsel; (2) error in the admission of extraneous offenses; and (3) error in the refusal of a requested charge.

### Summary of Facts

According to the trial testimony of complainant George Russell, he first saw appellant and another man, Marcus Jenkins on April 27, 1992, while working as a sales counselor at Circuit City. Appellant completed a credit application in the name of Ronnie Bates which Russell gave to a sales clerk along with a driver's license bearing Ronnie Bates' name. Appellant and Jenkins chose a television, and appellant signed a receipt for the television using the name Ronnie Bates.

On May 3, 1992, as witnessed by Russell, appellant returned to the store with a different person. This time appellant's companion applied for credit. A salesperson noticed that the driver's license was forged and called the police. Both appellant and his companion were arrested at that time.

Appellant was indicted for the events occurring on both occasions, but the charges relating to the events of May 3 were dropped. The case arising from the events of April 27 is now before this Court.

The State's witnesses included Russell, who testified as explained above, Marcus Jenkins, Ronnie D. Bates, and William David Hefner. Jenkins did not testify but was ordered to appear before Russell who identified Jenkins and said he threatened him not to testify. Bates testified that he did not buy a television at Circuit City, and Hefner, the arresting officer, testified that Jenkins was sleeping in appellant's apartment at the time appellant was arrested. Hefner also stated the signature on the driver's license did not match the signature on the credit application.

The above recital of facts was Russell's testimony during trial. In contrast, Russell testified at a pretrial hearing that it was Jenkins who completed and signed the credit application and presented the false identification on April 27. Russell stated that appellant stood next to Jenkins and an unnamed

---

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

woman, but Russell did not indicate if appellant knew Jenkins was using false identification or if appellant saw Jenkins sign Ronnie Bates' name. Russell denied that appellant participated in anything but the selection of the television. Russell also said Jenkins had threatened him not to testify. Jenkins was not a witness at the pretrial hearing.

Appellant was appointed counsel, Ronald Mock, for the trial; but after the jury was selected, appellant retained another attorney, Volley Bastine. The court determined that Bastine would be lead counsel with Mock assisting and granted a two-day continuance in order to give Bastine time to become familiar with the case. On the day of trial Bastine asked for another continuance, which was denied.

After the State rested its case, Bastine asked for a recess in order to call his witnesses to court. He had allowed them to leave that day because he believed the State would take longer in presenting its case and that his witnesses would not be needed until the next day. These witnesses included Jenkins and Kimberly Mayfield, a woman who allegedly saw Jenkins sign the credit application on April 27. Bastine told the court that he also wanted to call the court reporter who was present at the pretrial hearing to testify to Russell's inconsistent testimony at that hearing. The court refused the motion for recess and ordered counsel to call witnesses. Bastine replied, "We don't have any witnesses." The court then noted, "All right. Both sides rest."

Although the court had denied Bastine's motion for recess, it did not reconvene until 1:30 the next day, which was a Friday. However, Bastine did not come to court at the appointed time. He called the court at least twice to say that he would be there, but he never arrived. On Monday he informed the court that his actions were, in part, purpose-

ful as he felt he was not adequately prepared to defend his client. The court found him in contempt and continued with final argument on guilt.

Appellant then presented a series of *pro se* written motions including a motion for continuance, motion for mistrial or new trial, bill of exceptions, and motion to recuse. He orally requested that the court reopen the case to admit new evidence favorable to the defense. He stated that counsel had moved to reopen on Friday, but there is no record of that motion on appeal. Appellant's motions were denied.

### Ineffective Assistance of Counsel

In his first point of error, appellant contends that he was denied effective assistance of counsel as guaranteed under the state and federal constitutions.[2] Although appellant points to several instances to show counsel's general inattention and lack of preparedness,[3] he particularly complains that counsel failed to subpoena or call witnesses and counsel failed to investigate and prepare a defense. Because of their similarity, these complaints will be analyzed together.

### A. Standard of Review

The constitutional right to counsel does not mean errorless counsel or counsel whose competency is judged by hindsight. *Doherty v. State*, 781 S.W.2d 439, 441 (Tex. App.—Houston [1st Dist.] 1989, no pet.) Rather, the right means counsel reasonably likely to render reasonable assistance. *Id.* A reviewing court must presume adequate assistance and that all significant decisions were made in the exercise of reasonable professional judgment. *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984); *Roberson v. State*, 852 S.W.2d 508, 512 (Tex.Crim.App.1993).

---

2. Appellant primarily complains about Bastine's actions but occasionally mentions Mock's lack of preparedness. The issue is whether appellant received effective representation at trial and not which attorney made which mistake.

3. Appellants other complaints include: (1) failure to show diligence necessary to support a motion for continuance; (2) failure to have Mock continue as lead counsel; (3) failure to object to Bates' testimony about the fraudulent use of his credit; (4) failure to object to Russell's testimony describing the events of May 3; and (5) failure to make a record of counsel's motion to reopen. We decline to address these issues in light of our discussion of counsel's failure to call witnesses and prepare a defense.

■ Thus, to obtain a reversal on ineffective assistance of counsel, appellant must show that (1) counsel's performance was so deficient that he was not functioning as the counsel guaranteed by the sixth amendment; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2064; *Craig v. State,* 825 S.W.2d 128, 129 (Tex.Crim.App.1992). This standard does not require that defendant be found not guilty or assessed a lenient punishment absent counsel's errors. *See Doherty,* 781 S.W.2d at 442. Rather, according to *Strickland,* there must be a reasonable probability of a different result; that is, a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

### 1. Failure to Call or Subpoena Witnesses

Appellant argues that his counsel was ineffective because he did not subpoena or make available two defense witnesses, Jenkins and Mayfield. Appellant further argues that counsel inadequately impeached Russell. He argues that counsel should have obtained Russell's pretrial testimony in the form of a transcript or, alternatively, by calling the court reporter and appellant's former counsel, Kenneth Poland, to testify as to Russell's former testimony.

■ The failure to call witnesses, especially eyewitnesses who contradict the complainant's identification, may show ineffective assistance of counsel. *Butler v. State,* 716 S.W.2d 48, 55 (Tex.Crim.App.1986). However, counsel's failure to call such witnesses is irrelevant absent a showing that the witnesses were available and would benefit the defense. *Id.; Simms v. State,* 848 S.W.2d 754, 758 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd).

#### a. Kimberly Mayfield

Had it not been for counsel's decision to send his witnesses home for the day, Mayfield would have been available to testify at the guilt-innocence phase of trial. In addition, her testimony would have been beneficial to appellant. She testified during the punishment phase that she accompanied appellant to Circuit City on April 27 to look for a car phone. She said Jenkins was already there when they arrived. She further stated that she saw Jenkins fill out the credit application but did not see him sign the name of Ronnie Bates. This testimony corroborated Russell's pretrial testimony that appellant was not the primary actor.

■ Mayfield's testimony is also helpful to the charge that appellant acted as a party to the theft. A person is guilty as a party to an offense if he, acting with intent to promote or assist in the commission of the offense, solicits, encourages, directs, aids or attempts to aid another person in the commission of the offense. TEX.PENAL CODE ANN. § 7.02(a)(2) (Vernon 1994). Neither Mayfield nor Russell indicated that appellant acted with intent to promote or assist the commission of the offense. Although the jury could look to events occurring before, during, and after the commission of the offense, *Beardsley v. State,* 738 S.W.2d 681, 684 (Tex.Crim.App. 1987), no evidence showed that appellant even knew or was aware that Jenkins signed another's name or presented another's drivers license.

■ Appellee argues that Bastine's failure to call Mayfield constituted permissible trial strategy under *Strickland.* Bastine's failure was to send his witnesses home in misplaced reliance on the trial's pace or upon the court's willingness to grant a recess. He did not plan the court's refusal to recess or its requirement that the defense rest without producing any evidence. Although Bastine was effectively given a recess because the court did not reconvene until 1:30 the next day, he did not appear in court to re-urge his motion for recess or move to reopen. In his next appearance before the court, Bastine admitted that he was unprepared. These events do not constitute trial strategy, much less reasonable trial strategy.

Mayfield was available to testify, and her testimony was beneficial to the defense. Counsel's failure to call her as a witness during the guilt-innocence phase was ineffective assistance of counsel.

### b. Marcus Jenkins

■ Defense counsel did not subpoena Jenkins, who appeared at trial under the State's subpoena. However, as admitted by appellant in his brief, it is doubtful that a State's witness would provide testimony beneficial to the defense. Thus, failure to call or subpoena Jenkins was not ineffective assistance of counsel.

### c. Failure to Obtain Transcript or Witnesses

Appellant does not claim that counsel failed to impeach Russell but rather that impeachment was ineffective without extrinsic evidence of Russell's pretrial testimony. Appellant claims that counsel should have obtained the transcript before trial or that he should have called the court reporter and Kenneth Poland, pretrial counsel, to testify to Russell's inconsistent testimony. Counsel's failure to obtain the transcript reflects on counsel's preparation for trial and will be discussed separately.

■ As Bastine's motion for recess indicated, he was aware of Russell's inconsistency and the need to cast doubt on Russell's identification of the appellant. However, as Bastine was retained during trial, he had insufficient time to acquire the pretrial transcript. Yet, given the need to impeach Russell and the short preparation time, he failed to call former counsel or the court reporter. Their testimony would have been helpful to contradict Russell and to bolster Mayfield. Even applying a heavy measure of deference to counsel's judgment, we cannot say that the failure to obtain these pretrial witnesses was a reasonable decision.

### 2. Failure to Investigate and Prepare a Defense

■ Appellant complains that counsel failed to investigate and prepare for his defense. He alleges that had counsel properly investigated and prepared for trial, counsel would have been prepared to impeach the complainant with extrinsic evidence. An attorney who fails to make an independent investigation deprives his client of effective assistance of counsel. *Butler*, 716 S.W.2d at 54.

As noted, Bastine was aware of Russell's inconsistency but did not have a copy of the applicable transcript. Although Bastine himself did not have time to procure the transcript, nothing prevented Mock from procuring it. Neither Bastine nor Mock were present at the pretrial hearing and should have read the testimony in preparing for trial. In addition, the State continued to prosecute its case against appellant despite the complainant's testimony implicating Jenkins. Counsel should have been alerted to the possibility that Russell had changed his story. Under the circumstances, by failing to obtain the pretrial transcript, counsel did not reasonably prepare for trial.

### B. Application of Law to Facts

### 1. Counsel's Performance

Appellant was convicted based on the identification testimony of only one witness, Russell. For the jury to believe appellant was a spectator, and not an active participant in the fraudulent theft of the television, they had to believe Russell was mistaken in identifying appellant. Yet defense counsel put on no witnesses in support of his misidentification defense.

In this case, appellant showed that another eyewitness, Mayfield, was available and beneficial to his defense. Two other potential witnesses, Poland and the court reporter, could have substantiated the complainant's prior testimony, which was consistent with Mayfield's testimony. Appellant also showed that, because counsel failed to reasonably prepare and investigate, counsel lacked the pretrial testimony necessary to impeach Russell's identification.

We find that, considering the totality of counsel's representation of appellant, counsel's performance did not meet the standard of reasonably effective assistance of counsel required by the first prong of *Strickland*. We now consider the second prong of *Strickland's* test, whether appellant's defense was prejudiced by that failure.

## 2. Reasonable Probability of a Different Outcome

 Because counsel failed to call witnesses, the jury did not hear Mayfield's testimony that Jenkins alone committed the theft. Because counsel failed to obtain pretrial testimony or rebuttal witnesses, the jury did not hear Russell's prior testimony that Jenkins alone committed the theft. If they had heard this testimony, the jury may have acquitted appellant, under either theory of guilt. In fact, with no evidence that appellant knew of Jenkin's actions, he would have been entitled to acquittal as a matter of law.

We find a reasonable probability sufficient to undermine confidence in the outcome that, but for counsel's errors, the outcome of the proceeding would be different. Thus, appellant has met the second prong of *Strickland.*

Appellant's point of error one is sustained.

### Requested Charge and Extraneous Offenses

In his third point of error, appellant argues that the trial court erred in the guilt-innocence phase by refusing his requested charge on the lesser included offense of false statement to obtain property or credit. In his second point of error, appellant argues that the trial court erred in the punishment phase by admitting evidence of unadjudicated extraneous offenses. We decline to address these points of error in light of our disposition of the first point of error.

The judgment is reversed, and the cause remanded to the trial court for a new trial.

### HUTSON–DUNN, Justice, dissenting.

In this case, appellant asserts that his counsel was ineffective by: (1) failing to secure the presence of witnesses that could rebut the trial testimony of George Russell, the complainant, and corroborate Russell's pretrial testimony; and (2) failing to obtain a transcript of Russell's pretrial testimony to aid in impeaching him at trial. The majority agrees with appellant and finds that the failure to take these measures constituted a violation of both prongs of *Strickland v.*

*Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). I disagree. I believe that many of counsel's alleged errors fall within the range of what could be considered sound trial strategy. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2068; *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994). Further, even if appellant's lawyers had taken all of the measures that the majority finds that they should have, appellant has not shown a reasonable probability that the result of his trial would have been different. *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2064; *Craig v. State,* 825 S.W.2d 128, 129 (Tex.Crim.App.1992).[1] Therefore, I dissent.

The majority points to several acts that were allegedly deficient and harmful to appellant's case. I will discuss each of these in turn.

### 1. Failure to Call or Subpoena Witnesses

The majority finds that counsel's failure to call defense witnesses during the guilt-innocence phase of trial constituted ineffective assistance because their testimony would have benefitted appellant's defense had they been called. *See Simms v. State,* 848 S.W.2d 754, 758 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd) (trial counsel's failure to call witnesses at guilt-innocence stage is irrelevant absent a showing that such witnesses were available and that appellant would benefit from their testimony). I disagree. I would find that, even had counsel called or subpoenaed defense witnesses, the record does not show that their testimony would have benefitted appellant's defense.

#### a. Kimberly Mayfield

Upon careful review of the record, I believe that counsel had a strategical reason to defer calling Kimberly Mayfield until the punishment phase of trial. On cross-examination by the State during punishment, Mayfield testified that Volley Bastine told her at the beginning of trial, immediately after Tex. R.Crim.Evid. 613 had been invoked, that she

---

1. A defendant must prove his ineffectiveness claim by a preponderance of the evidence.

*Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim. App.1985).

did not need to wait outside the courtroom because he did not want her to testify. It is possible that Mayfield was unwilling to testify before the punishment phase or that counsel, at that time, felt that her testimony would have been detrimental to appellant.

Further, even if Mayfield had testified during the guilt-innocence phase of trial that Jenkins filled out the credit application, appellant has failed to show how he would have benefitted from her testimony. The jury was charged under the law of parties. This required the jury to find appellant guilty if it found that "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX.PENAL CODE ANN. § 7.02 (Vernon 1994).

From the evidence in the record, it is clear that the jury would likely have found appellant guilty as a party even if Mayfield had testified. Russell testified during the pretrial hearing that appellant and Jenkins chose the television, and both men discussed with him which television they should purchase. Further, there is ample evidence to demonstrate that appellant knew that Jenkins falsely identified himself as Ronnie Bates when the television was purchased. Officer William Hefner, a witness called by the State at trial, testified that he had arrested Jenkins at appellant's apartment before April 27 in an unrelated matter and that appellant and Jenkins knew each other at that time. Further, Russell testified during the pretrial hearing that appellant stood next to Jenkins when Jenkins signed the credit increase. Finally, at trial Russell described appellant's involvement in the May 3 offense, in which appellant and a second companion purchased another television on false credit.

If Mayfield had testified during the guilt-innocence phase of trial, the jury would probably still have found appellant guilty of theft pursuant to the court's charge on the law of parties. I would find that appellant has failed to satisfy both prongs of *Strickland*.

### b. Marcus Jenkins

I agree with the majority that the failure to call or subpoena Marcus Jenkins as a witness was not ineffective assistance of counsel.

### c. The Court Reporter and Kenneth Poland

The majority finds that counsel was ineffective by failing to secure the presence of the following witnesses at trial so that their testimony could be used to effectively impeach Russell's trial testimony: (1) the court reporter from the pretrial hearing; and/or (2) Kenneth Poland, pretrial counsel.

Even assuming that counsel should have secured the presence of these witnesses, appellant has failed to show how he would have benefitted from their testimony. As noted, the jury was charged on the law of parties. Assuming these witnesses had testified and the jury had believed them, the jury still would likely have found appellant guilty of theft as a party. The record shows that appellant assisted in the decision to purchase the television, and he knew that Jenkins was not Ronnie Bates.

I would find that appellant has failed to satisfy the second prong of *Strickland*.

### 2. Failure to Investigate and Prepare a Defense

The majority finds that counsel's failure to obtain a transcript of Russell's pretrial testimony demonstrates that Ronald Mock, Bastine's assistant counsel, did not adequately prepare for trial. Regardless of whether the majority is correct on this point, I would find that appellant has not demonstrated a reasonable probability that the outcome of his trial would have been different had the pretrial transcript been used to impeach Russell's testimony at trial.

The record reflects that appellant's counsel did an adequate job of impeaching Russell even without the benefit of extrinsic evidence to prove his prior inconsistent statement. On cross-examination, Bastine asked Russell whether he had testified earlier that Jenkins had filled out the credit application. He also attempted to get Russell to admit that Jenkins must have been the man who filled out the application because it was Jenkins' picture on the driver's license used to get the

credit. Further, even if appellant's counsel had obtained and used a transcript of the pretrial hearing to impeach Russell, there still would have been sufficient evidence before the jury to find appellant guilty as a party.

I would find that appellant has not met the second prong of *Strickland.*

I would overrule appellant's first point of error.

In his remaining two points of error, appellant asserts error in the admission of evidence during the punishment phase of trial, and error in the refusal of a requested charge. Since I would overrule appellant's first point of error, I would proceed to address these points.