**Opinion issued March 31, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00139-CR

————————————

## EX PARTE OSCAR MINJARE SANCHEZ, JR.

---

## On Appeal from the 176th District Court
## Harris County, Texas
## Trial Court Cause No. 1412036-A

---

## OPINION ON EN BANC RECONSIDERATION

We granted Oscar Minjare Sanchez, Jr.'s motion for en banc reconsideration

and withdrew the opinion and judgment issued December 20, 2018. We issue this

en banc opinion and judgment in their stead. Sanchez appealed from the denial of

his post-conviction application for a writ of habeas corpus filed under Texas Code

of Criminal Procedure art. 11.072. Sanchez, in his sole issue, contended that his trial

counsel rendered ineffective assistance by failing to call exculpatory witnesses

during the guilt/innocence phase of his trial. Because the habeas court's findings of fact and conclusions of law that it made in denying Sanchez a hearing on his writ are unsupported by the record, we reverse and remand for further proceedings consistent with this opinion.

**BACKGROUND**[1]

Sanchez was the designated driver for his four passengers on a night out celebrating a friend's birthday at two bars. After closing time, he was driving the group home in his Ford F-250 on Highway 249 when a police chase appeared in front of him. An unmarked police car, a Chevy Impala driven by Harris County Sheriff's Office Lieutenant G. Goudeau, suddenly moved in front of him, causing Sanchez to swerve left to try to avoid an accident.

According to one officer who observed the Ford F-250 and the Impala from his rear-view mirror while driving 100 miles an hour and participating in a police chase, the front of Sanchez's truck collided with the back of Lieutenant Goudeau's Impala. The officer saw the rear of the Impala go up in the air before it struck the curb and spun into a nearby parking lot.

Sanchez continued home without stopping. After Lieutenant Goudeau radioed for help, Sergeant K. Benoit, who was following the chase vehicles and testified that

---

[1] The underlying facts are more fully set forth in this Court's opinion affirming Sanchez's conviction. *See Sanchez v. State*, No. 01-16-00293-CR, 2017 WL 1424949, at *1–2 (Tex. App.—Houston [1st Dist.] Apr. 20, 2017, pet. ref'd) (mem. op., not designated for publication).

he had seen the accident, returned to the scene, and saw that Goudeau was injured. Benoit waited with Goudeau until an ambulance transported her to the hospital, where she stayed for four days to treat severe injuries.

After hearing about the accident on the news the next morning, Tomball Police Department Captain R. Grassi, who was a passenger in the car with Sanchez, called the captain of the Harris County Sheriff's Office to share information about the incident. Sanchez was with him.

Sanchez told Deputy A. Marines that a dark-colored Impala had suddenly darted into his lane on the Highway 249 feeder road and that he hit his brakes, swerved, and entered the middle lane to avoid hitting it. Sanchez did not know where the Impala went after it entered his lane. Sanchez cooperated and answered Deputy Marines's questions and allowed him to examine the Ford F-250 twice. Deputy Marines testified that it was rare for someone to come forward and cooperate as Sanchez did.

Although Goudeau's vehicle sustained serious damage, investigation revealed only minor cosmetic damage to Sanchez's truck. Photos depicted a faint scuff mark on the bumper between the fog lamp and the tail ring, a crack on the right side of the grill, a dark plastic piece embedded in the tread of a tire, and a scuff mark on the undercarriage. The first time he inspected the truck, Marines did not see it, but the second time he returned to Sanchez's truck, he saw a bit of gray metallic paint that

3

appeared to match the Impala but not the silver paint on Sanchez's F-250. Chemical analysis revealed that the paint could have come from Goudeau's Impala or any other vehicle with similar paint characteristics. An unknown number of vehicles have a similar paint profile.

Sanchez was charged with the third-degree felony offense of failure to stop and render aid. A jury convicted him in 2016. *See Sanchez v. State*, No. 01-16-00293-CR, 2017 WL 1424949, at *1 (Tex. App.—Houston [1st Dist.] Apr. 20, 2017, pet. ref'd) (mem. op., not designated for publication). The State did not call any of the passengers in Sanchez's car as witnesses. The defense did not put on any witnesses.

The trial court assessed Sanchez's punishment at 10 years' confinement but probated the sentence by placing him on 10 years' community supervision, with 30 days' confinement in the Harris County Jail as a condition of probation. *See id.* This Court affirmed Sanchez's conviction in 2017, in which he raised two issues, that the trial court erred in submitting a voluntary-intoxication charge to the jury and that the evidence was insufficient because it failed to show that he knowingly left the accident. *See id.* The Court of Criminal Appeals refused Sanchez's petition for discretionary review, and this Court's mandate issued.

In 2017, Sanchez applied for a writ of habeas corpus under Texas Code of Criminal Procedure article 11.072 and requested a hearing. In his application,

4

Sanchez alleged that his trial counsel had provided ineffective assistance by failing to call necessary exculpatory witnesses. Sanchez claimed that his trial counsel should have called three of the four passengers in his truck, Captain R. Grassi, S. Martin, and B. Flores, to testify. These three witnesses provided affidavits, attached to Sanchez's application, stating that they were passengers in his truck, they saw him swerve around the car that darted out in front of them, and they were unaware of a collision. The State did not respond to Sanchez's application.

In 2018, the habeas judge, who was not the judge who had presided over the trial, signed an order denying Sanchez's habeas application without an evidentiary hearing. Sanchez timely filed notice of appeal and the habeas court certified that Sanchez had a right of appeal. Because the habeas court's order did not deny Sanchez's habeas application as frivolous and the clerk's record did not include the required findings of fact and conclusions of law, this Court abated the appeal. *See* TEX. CODE CRIM. PROC. art. 11.072, § 7(a).

**The Habeas Court's Findings of Fact and Conclusions of Law**

In response to the order abating the appeal, the trial court filed a supplemental clerk's record, which included the habeas court's findings of fact and conclusions of law. The pertinent findings of fact and conclusions of law, proposed by the State and signed by the habeas court, are:

# FINDINGS OF FACT

. . . .

5. The applicant claims trial counsel failed to present evidence from Captain [R.] Grassi, [S.] Martin, and [B.] Flores during the applicant's trial.

6. The applicant claims that these witnesses would have testified that they were passengers in the applicant's vehicle and that they were not aware of the applicant's vehicle colliding with the complainant's vehicle.

7. The trial court finds that trial counsel did not call any witnesses in his case-in-chief during the guilt[/]innocence phase of the applicant's trial.

8. The trial court finds, based on the reporter's record, that trial counsel's cross[-]examination of Deputy [R.] Musil elicited testimony that Grassi, Martin, and Flores all made consistent statements to law enforcement about what happened. . . .

. . . .

11. The trial court finds that the applicant fails to show that trial counsel was deficient.

12. The trial court finds that the applicant fails to establish a reasonable probability that the result of the proceeding would have been different had these witnesses been called to testify at the applicant's trial.

# CONCLUSIONS OF LAW

. . . .

3. The applicant fails to show that Grassi, Martin, and Flores were available and that their testimony would have benefited the defense. *See King v. State*, 649 S.W.2d 42 (Tex. Crim. App. 1983); [*E*]x parte *Flores*, 387 S.W.3d 626, 638 (Tex. Crim. App. 2012) (the applicant must still show that "some benefit" establishes a reasonable probability that the result of the proceeding would have been different, i.e., one sufficient to undermine confidence in the outcome).

. . . .

5. In all things, the applicant has failed to demonstrate that he was denied the effective assistance of counsel.

Accordingly, the instant application is **DENIED.**

After this Court reinstated the case and requested briefing, both Sanchez and the State filed briefs, and Sanchez filed a reply. *See* TEX. R. APP. P. 31.1.

## DISCUSSION

### A. Standard of review

Under Article 11.072, when a person applies for habeas corpus relief, "the applicant must be, or have been, on community supervision, and the application must challenge the legal validity of: (1) the conviction for which or order in which community supervision was imposed; or (2) the conditions of community supervision." TEX. CODE CRIM. PROC. art. 11.072, § 2(b). Because Sanchez challenges the validity of the conviction which placed him on community supervision for a 10-year period, we have jurisdiction to review the denial of his habeas application. *See id.* § 8 ("If the application is denied in whole or part, the applicant may appeal under Article 44.02 and Rule 31, Texas Rules of Appellate Procedure.").

Generally, an appellate court reviews a trial court's decision to grant or deny habeas corpus relief for an abuse of discretion. *See Ex parte Zantos-Cuebas*, 429 S.W.3d 83, 87 (Tex. App.—Houston [1st Dist.] 2014, no pet.). We view the evidence in the light most favorable to the trial court's ruling. *See Kniatt v. State*, 206 S.W.3d

657, 664 (Tex. Crim. App. 2006). We will uphold the habeas court's judgment as long as it is correct under any theory of law applicable to the case. *See Ex parte Taylor*, 36 S.W.3d 883, 886 (Tex. Crim. App. 2001) (per curiam). But if, as here, the habeas judge was not the trial judge and there was no evidentiary hearing, the judge is not in an appreciably better position than the reviewing court to resolve the matter. Thus, a de novo review is appropriate. *See Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999) (the generally applied abuse-of-discretion standard is not appropriate "when the decision does not turn on the credibility or demeanor of witnesses").

We afford deference to the trial court's determination of historical facts supported by the record. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). "However, if the trial court's findings of fact are not supported by the record, then we may reject its findings." *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004).

## B.    The *Strickland* standard

To establish that trial counsel rendered ineffective assistance, an appellant must demonstrate, by a preponderance of the evidence, that (1) his counsel's performance was deficient, and (2) there is a reasonable probability that the result of the proceeding would have been different but for his counsel's deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ex parte*

*White*, 160 S.W.3d at 52. The appellant's failure to make either of the required showings of deficient performance or sufficient prejudice defeats the claim of ineffective assistance. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

We indulge a presumption that counsel's conduct fell within the range of reasonable professional assistance, and thus, the appellant must overcome the presumption that the challenged action constituted "sound trial strategy." *Strickland*, 466 U.S. at 689; *Williams*, 301 S.W.3d at 687. Our review is highly deferential to counsel, and we do not speculate on counsel's trial strategy. *See Bone v. State*, 77 S.W.3d 828, 833, 835 (Tex. Crim. App. 2002). To prevail on an ineffective-assistance claim, the appellant must provide an appellate record that demonstrates that counsel's performance was not based on sound strategy. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (holding that record must affirmatively demonstrate alleged ineffectiveness).

A defendant in a criminal case is entitled to reasonably effective assistance of counsel, including investigation of the defendant's case. *Strickland*, 466 U.S. at 690–91. Part of the duty to investigate is counsel's responsibility to seek out and interview potential witnesses. *Butler v. State*, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986). To show ineffective assistance of counsel based on an uncalled witness, an appellant

must show two things: (1) the witness would have been available to testify; and (2) the witness's testimony would have been of some benefit to the defense. *Everage v. State*, 893 S.W.2d 219, 222–23 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). To meet the availability requirement, proposed witnesses must testify or swear in an affidavit that they were available to testify at the defendant's trial. *See Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007).

An ineffectiveness claim based on the failure to call witnesses may be established through either testimony on the record or an affidavit from the uncalled witness. *See Ex parte White*, 160 S.W.3d at 52 (applicant provided affidavit from uncalled witness). While we defer to any underlying historical fact determinations made by the habeas court, we review the ultimate question of prejudice de novo. *See Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005).

## C.     Evaluation of the Findings of Fact and Conclusions of Law

In his sole issue, Sanchez claims that the habeas court abused its discretion because he proved that his trial counsel was ineffective by showing that Captain Grassi and Martin were available to testify and would have aided his defense. The State contends that Sanchez's ineffectiveness argument is irrelevant because the witnesses' affidavits did not state that they were available on the date of trial and would have benefited the defense. In any event, the State argues that Sanchez cannot meet either of the *Strickland* prongs because he cannot show that his trial counsel's

performance was deficient or that there was a reasonable probability that the jury would have acquitted him had the witnesses testified.

## 1. Performance prong

For the first *Strickland* prong, performance of counsel, as discussed above, to show ineffectiveness of counsel based on an uncalled witness, an appellant must show two things: (1) the uncalled witness would have been available to testify; and (2) the witness's testimony would have been of some benefit to the defense. *See Strickland*, 466 U.S. at 687. Sanchez conceded that Flores's affidavit did not state that he was available to testify, so we only need to analyze the affidavits of Captain Grassi and Martin.

### a. Captain Grassi's affidavit

Captain Grassi's affidavit stated that he was a Tomball police captain and that on the date in question, he was riding as a passenger in Sanchez's truck with three other passengers when they observed a high-speed car chase conducted by the Harris County Sheriff's Office. Captain Grassi further stated that he contacted the Tomball Police Department to advise them what he was witnessing, and he told Sanchez to follow the chase. During the chase, an unmarked police vehicle cut directly in front of Sanchez's truck, forcing Sanchez to veer to the left to avoid striking the car, but Captain Grassi stated he was never aware of Sanchez's truck striking that vehicle, and he did not see any visible damage to Sanchez's truck the next day. Captain

Grassi concluded that he "was not aware of having collided with the other vehicle," but that Sanchez's "truck is a large, heavy-duty work truck, so it is possible there was a glancing strike to the other vehicle, but nobody in Oscar's vehicle showed any knowledge of having been in a collision[.]"

Sanchez has not shown that Captain Grassi would have been available to testify because his affidavit did not discuss whether he would have. *See Ex parte Ramirez*, 280 S.W.3d at 853. Thus, the Court need not reach the second requirement of whether Captain Grassi's testimony would have been of some benefit to the defense.

### b. Martin's affidavit

Martin's affidavit stated that "[o]n the night of August 11, 2013, my husband [B.] Flores, [R.] Grassi and his girlfriend [M.], Oscar Sanchez and me went out for [Grassi]'s birthday . . . at a pub playing shuffle board and then decided to go to Whiskey River." Martin's affidavit continued that, after leaving Whiskey River, "there was a high speed chase on 249 going north" and "Rick asked Oscar to follow the chase while he was on the phone with someone from his police station where he works." Martin's affidavit stated that "I was sitting behind Oscar chatting with [M.] not really paying much attention to the road up ahead but did see a car up ahead on the left side of us," and then "Oscar slams on his brakes and honks his horn, and swerves away from a car." Martin's affidavit concluded that, "I did not observe any

12

collision between Oscar's truck and any car that night," "[i]f we had been in a collision I would have noticed it," and "[i]f I had been asked to testify at Mr. Sanchez's trial, I would have gladly done so."

With this last sentence, Martin represented that she would have been available to testify at Sanchez's trial, satisfying the first prong of the performance inquiry. *See Strickland*, 466 U.S. at 687. The remaining question is whether Martin's testimony would have been of "some benefit" to the defense.

Given that Sanchez put on no defense and Lieutenant Goudeau could not recall the collision, the jury heard an incomplete story from those closest to the action with the best opportunity to observe it. The State's witnesses testified that Sanchez's passengers' recollection of the accident was "consistent with" the State's theory that Sanchez struck Lieutenant Goudeau's vehicle, but Martin's affidavit conveys the opposite. Martin would have testified that there was no impact that anyone observed, which would have contradicted the State's theory and its characterization of her statement. Her testimony would have bolstered Sanchez's trial theory. *See Everage v. State*, 893 S.W.2d 219, 222 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (failure to call witness who could have corroborated defendant's testimony that he was not primary actor was ineffective assistance of counsel). Martin's testimony would have been favorable to Sanchez. Accordingly, Sanchez established that at

13

least one witness was available and their testimony would have been of some benefit to the defense, under the first *Strickland* prong.

## 2. Prejudice

For the second *Strickland* prong, Sanchez needed to show a reasonable probability that the result of the proceeding would have been different, undermining confidence in the outcome of the trial. *Bone*, 77 S.W.3d at 833 (citing *Strickland*, 466 U.S. at 687).

The elements of the offense of failure to stop and render aid are that the defendant (1) is the driver of a vehicle; (2) involved in an accident; (3) causing injury or death of any person; (4) and the driver intentionally or knowingly; (5) fails to stop and render assistance. *McGuire v. State*, 493 S.W.3d 177, 205 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd); TEX. TRANSP. CODE § 550.021(c). Because Sanchez did not contest that he was the driver and he did not stop to assist Lieutenant Goudeau, who was injured, the disputed issues in the case were whether Sanchez was "involved in an accident" and whether he "intentionally or knowingly" failed to stop and render aid.

The evidence against Sanchez was not overwhelming. *See Ex parte Ybarra*, 629 S.W.2d 943, 952 (Tex. Crim. App. 1982) (en banc) (where the State's evidence is circumstantial and "suggests a number of outstanding reasonable hypotheses besides the guilt of the accused, failure to present any evidence" on the accused's

behalf is harmful). Here, the complaining witness could not remember the accident and did not know whether Sanchez knew he had struck her vehicle. Another officer testified to what he saw through his rearview mirror while driving 100 miles an hour away from the accident during a police chase. The physical evidence was weak. There was no sign that the airbags deployed. There was no evidence of anything else that should have alerted Sanchez that his truck had collided with the Impala. Sanchez's large truck had minimal damage. The physical evidence did not exclude sources other than a collision with the Impala for the scuff marks on the bumper and undercarriage, the crack on the grill, the grey paint, and the dark plastic remnant in the tire tread. There was no evidence of Sanchez's state of mind at the time of the accident. Sanchez came forward the day after the accident and cooperated with the investigation. The defense put on no witnesses at all.

Sanchez's defense was that there was no collision or if there was, it was so minor that he was unaware of it. Failure to call a witness to advance these denial and mens rea defenses can be prejudicial. *See Butler v. State*, 716 S.W.2d 48, 54–55 (Tex. Crim. App. 1986) (failure to call alibi witnesses was ineffective assistance of counsel and undermined confidence in the outcome of the trial); *In re I.R.*, 124 S.W.3d 294, 300 (Tex. App.—El Paso 2003, no pet.) ("The failure to interview or call a witness satisfies the prejudice prong if it results in the failure to advance a viable defense."); *Shelton v. State*, 841 S.W.2d 526, 527 (Tex. App.—Fort Worth

1992, no pet.) (failure to call a witness who, if believed, would have contradicted the complainant's version of events so that "it would have been impossible for the jury to have believed both witnesses" was prejudicial); *State v. Thomas*, 768 S.W.2d 335, 337 (Tex. App.—Houston [14th Dist.] 1989, no pet.) (holding that defendant accused of sexual assault and who admitted having sex with the complainant was prejudiced by trial counsel's deficient performance in failing to call witnesses who would have corroborated his defense of consent). An exculpatory eyewitness whose testimony would corroborate Sanchez's defense that there was no accident likely would have made an impact on the jury. Indeed, the absence of these witnesses was an issue at trial.

In closing argument, the State capitalized on the decision not to call any of Sanchez's passengers that night:

> You guys didn't hear from them, but did you need to? They all said the same thing. They were all drunk people in the car with the defendant.
> . . .
> [Sanchez] knew that that crash resulted in large injuries and possibly death, based on the severity of it if he had stopped. So, why wouldn't you want to stop for that? There's going to be a crime maybe. He's got a captain in his car. They're following a chase. That captain's been drinking. He is friends with the defendant. Do you want to get your friend in trouble? Do you want to get in trouble by the Tomball Police Department because you're in the middle of a chase?

In a case that presented two competing versions of events, the jury did not have a chance to hear from and evaluate the credibility of one or more eyewitnesses

16

closest to the accident. Instead, the State dismissed them as "drunk people" and suggested that Grassi was doing something wrong by following a police chase and that his testimony would have only gotten Sanchez in trouble. Had trial counsel called Martin to testify that no collision occurred, there was a reasonable probability of a different result.

### 3. Trial strategy

Even when an uncalled witness is available and his unoffered testimony would have likely benefitted the defense, it still may be that defense counsel's representation was not deficient. *See Everage*, 893 S.W.2d at 222. This is because there may be reasonable trial strategies that counsel against putting into evidence even helpful testimony. For example, by calling a helpful witness, the defense might open the door to potentially more harmful impeachment. As another example, if defense counsel knows that a helpful witness plans to lie under oath, it is not deficient performance to decline to call the person to testify.

Here, because the State did not respond to Sanchez's petition with insight into trial counsel's strategy and the habeas court refused an evidentiary hearing, it is simply unknown whether Sanchez could have established deficient performance with no reasonable trial strategy.

## 4. Trial court's findings of fact and conclusions of law

The habeas court order denying an evidentiary hearing and denying Sanchez's application for habeas relief concluded that Sanchez "fails to show that Grassi, Martin, and Flores were available and that their testimony would have benefited the defense." Although the habeas court's conclusion that Sanchez failed to show that Captain Grassi and Flores were available to testify at Sanchez's trial is supported by the record, the same cannot be said for its finding that Sanchez failed to show that Martin was available. *See Ex parte Wheeler*, 203 S.W.3d 317, 325–26 (Tex. Crim. App. 2006). Martin stated, "If I had been asked to testify at Mr. Sanchez['s] trial, I would have gladly done so." This is sufficient to show availability. Thus, the habeas court's third conclusion of law, that the "applicant fails to show that . . . Martin [was] available," is unsupported by the record. *Cf. Miller v. State*, 393 S.W.3d 255, 268 (Tex. Crim. App. 2012) (reversing trial court's denial of defendant's motion to suppress because the trial court's legal conclusion that police were legally present in appellant's apartment was unsupported by the record).

Similarly, the habeas court's conclusion that Sanchez "fails to show" that Martin's "testimony would have benefited the defense" is not supported by the record. As discussed above, Martin's testimony as outlined in her sworn statement would have been that there was no collision and that she and the other passengers would have known if there had been. At trial, no witness testified that there was no

collision. Martin's live testimony would not have been cumulative because it would have added the detail about there being no collision and would have provided a defense witness for the jury to evaluate for credibility. *See State v. Arizmendi*, 519 S.W.3d 143, 150 (Tex. Crim. App. 2017) (cumulative evidence conveys "the same facts with at least the same degree of credibility").

The only thing the jury heard about Martin's statement that benefitted the defense was a general description that it was "consistent" with Sanchez's version of events. But the jury also heard that the passengers' statements were "consistent" with the State's theory of the case. Specifically, Deputy Musil testified that all four passengers' statements were "consistent with [Musil's] theory of the case." The jury received, at best, mixed messages about whether the passengers' statements aligned with Sanchez or the State. Without knowing exactly what Martin's statement was, it was not terribly probative for the jury to hear that it was "consistent" with two diametrically opposed theories of the case. Martin's affidavit shows that her testimony would have been of "some benefit" to the defense and, looking at the totality of the trial, that there was a reasonable probability that the result of the trial would have been different had she testified about what she saw.

The habeas court erred by concluding that Sanchez failed to show "a reasonable probability that the outcome would have been different had Martin been called to trial." The habeas court did not hear from trial counsel, or receive a response

from the State, and it did not conduct an evidentiary hearing. On these facts, without more information from trial counsel about why these witnesses were not called, we cannot conclude that Sanchez received ineffective assistance of counsel because we have no information about trial strategy. *See Ex parte Garcia*, 353 S.W.3d 785, 789 (Tex. Crim. App. 2011) (habeas relief cannot be granted based only on the applicant's sworn pleadings and instead can be supported by live, sworn testimony); *cf. Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003) (en banc) (noting in the direct appeal context that the record is undeveloped where trial counsel has not had a chance to respond to allegations of ineffectiveness and explain any strategic decisions).

The dissent contends that Sanchez's application was properly denied because he did not meet his burden to address trial strategy in support of his ineffective-assistance claim. The dissent would require a habeas applicant to elicit an affidavit from trial counsel admitting deficient performance before the State is compelled to respond or any evidentiary hearing is granted to avoid having a denial of an application insulated from meaningful review. The habeas process does not require so much. *Cf. Ex parte Medrano*, No. WR-87,182-01, 2018 WL 1161565 at *1 (Tex. Crim. App. Jan. 10, 2018) (noting that court had remanded case for affidavit from trial counsel because findings of fact and conclusions of law were insufficient to address issues raised in habeas application); *Ex parte Horton*, No. WR-77,149-01,

2013 WL 4830324, at *1–2 (Tex. Crim. App. Sept. 11, 2013) (remanding a third time because findings of fact and conclusions of law were insufficient to address applicant's allegations). Indeed, this is not the first time this Court has remanded for further proceedings because the habeas court's conclusions could not be reconciled with the allegations in the application, even after a hearing. *See Ex parte Zantos-Cuebas*, 429 S.W.3d 83, 91–92 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

Because the record does not support the habeas court's findings of fact and conclusions of law on performance and prejudice under *Strickland* as to the failure to call Martin, we cannot affirm the denial of habeas relief under Article 11.072. The open question on trial counsel's strategy does not compel a different result.

### CONCLUSION

We decline to adopt the trial judge's findings of fact and conclusions of law as written because they are unsupported by the record. We reverse the order of the trial court denying habeas relief and remand for proceedings consistent with this opinion.

Sarah Beth Landau
Justice

Panel consisted of Justices Keyes, Massengale, and Brown.

En banc reconsideration was requested. TEX. R. APP. P. 49.7.

21

The en banc court consists of Chief Justice Radack and Justices Keyes, Lloyd, Kelly, Goodman, Landau, Hightower, and Countiss.

A majority of the justices of this Court voted in favor of reconsidering the case en banc.

Justice Landau writing for the majority of the en banc court, joined by Justices Kelly, Goodman, Hightower, and Countiss.

Justice Keyes dissenting, joined by Justice Lloyd.

Chief Justice Radack dissenting without opinion.

Publish.  TEX. R. APP. P. 47.2(b).