

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00491-CR

Gabriel Rene **ALEMAN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. A24552
Honorable Albert D. Pattillo, III, Judge Presiding

Opinion by:  Lori I. Valenzuela, Justice

Sitting:  Lori I. Valenzuela, Justice
Adrian A. Spears II, Justice
Velia J. Meza, Justice

Delivered and Filed: June 24, 2026

AFFIRMED

In two appellate issues alleging ineffective assistance of counsel, appellant Gabriel Rene Aleman challenges his murder conviction. We affirm the judgment of conviction.

### BACKGROUND

It is undisputed that on July 20, 2024, Aleman fired five shots toward an apartment in Kerrville, Texas. One of those shots hit an occupant of the apartment, Deanna Arispe, who later died from her injuries.

A Kerr County grand jury indicted Aleman for the offense of murder. The indictment outlined 3 paragraphs: (1) knowingly causing Arispe's death; (2) causing Arispe's death while committing an act clearly dangerous to human life in the course of intentionally or knowingly committing the felony of unlawful possession of a firearm; and (3) causing Arispe's death while committing an act clearly dangerous to human life in the course of intentionally or knowingly committing the felony of deadly conduct. *See* TEX. PENAL CODE § 19.02(b)(1), (3) (defining murder); *see also* TEX. PENAL CODE § 46.04(a)(1) ("A person who has been convicted of a felony commits an offense [of unlawful possession of a firearm] if he possesses a firearm . . . after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony[.]"); TEX. PENAL CODE § 22.05(b)(2) ("A person commits an offense [of deadly conduct] if he knowingly discharges a firearm at or in the direction of . . . a habitation . . . and is reckless as to whether the habitation . . . is occupied.").

The State abandoned Paragraph 1 and proceeded to trial only on the felony murder charges in Paragraphs 2 and 3. On June 23, 2025, Aleman stipulated in writing that prior to this incident, he was convicted of the felony offense of evading arrest in a motor vehicle and was released from confinement for that offense on April 12, 2024. *See* TEX. PENAL CODE § 46.04(a)(1). Aleman's written stipulation was entered into evidence at trial.

After hearing the evidence, the jury found Aleman guilty of murder and found the enhancement allegation to be true. The jury then assessed punishment of 70 years' confinement and a $10,000 fine. The trial court signed a judgment of conviction consistent with the jury's verdict.

Aleman filed a motion for new trial, which asserted, *inter alia*, that he had been denied effective assistance of counsel because his appointed trial counsel did not "provide[] or show[]

him discovery in this case" and "only consulted in person with [Aleman] sparingly[.]" The motion did not assert any other ineffective assistance arguments. The trial court denied the motion in a written order on July 11, 2025. One week later, Aleman's trial counsel filed an affidavit refuting the ineffective assistance arguments that Aleman asserted in the motion. The record does not indicate that the trial court considered counsel's affidavit.

Aleman now appeals his conviction.

## ANALYSIS

In two issues, Aleman argues he was denied effective assistance of counsel at trial.

### *Standard of Review and Applicable Law*

We review claims of ineffective assistance of counsel under a two-pronged test. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Aleman bears the burden to establish both prongs of the *Strickland* test by a preponderance of the evidence. *See Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).

"Prevailing on an ineffective assistance of counsel issue on direct appeal is difficult[.]" *Limauro v. State*, 675 S.W.3d 368, 375 (Tex. App.—Dallas 2023, no pet.); *see also Jackson v. State*, 877 S.W.2d 768, 772 (Tex. Crim. App. 1994) (Baird, J., concurring) ("As a general rule, one should *not* raise an issue of ineffective assistance of counsel on direct appeal."). The record in a direct appeal typically will not be sufficiently developed to support an ineffective assistance claim because it will not show the reasons for trial counsel's challenged actions. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). As a result, ineffective assistance claims "are more appropriately urged in a hearing on an application for a writ of habeas corpus." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

On the first prong, Aleman must show his trial counsel's representation was so deficient that it "fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions[.]" *Id.* Our review of trial counsel's performance "is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). The alleged ineffectiveness "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 813. Where the record is silent as to the reasons for trial counsel's conduct, he is entitled to "the benefit of the doubt," and we must assume that he "had a strategy if any reasonably sound strategic motivation can be imagined." *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021). In reviewing this question, we do not examine "isolated acts or omissions," but instead analyze trial counsel's performance "in light of the totality of the representation[.]" *Scheanette v. State*, 144 S.W.3d 503, 509 (Tex. Crim. App. 2004) (internal quotation marks omitted). "Any error in trial strategy will be deemed inadequate representation only if counsel's actions lack any plausible basis." *Dickerson v. State*, 87 S.W.3d 632, 637 (Tex. App.—San Antonio 2002, no pet.).

To satisfy the second prong of the *Strickland* test, Aleman must establish "a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). The benchmark for performing this analysis is "'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex. Crim. App. 2005) (quoting *Strickland*, 466 U.S. at 686).

***Application***

In his first issue, Aleman argues his trial counsel was ineffective because he: (1) stipulated that Aleman had previously been convicted of a felony; (2) did not assert a Confrontation Clause objection to a recording of a 9-1-1 call made immediately after the shooting; (3) did not assert a Confrontation Clause objection to surveillance camera footage from a bar Aleman visited before and after the murder; (4) did not object to the State's purported failure to lay a proper predicate for the admission of a photo of Arispe; (5) failed to present witnesses on Aleman's behalf during the guilt/innocence phase of trial; and (6) did not voir dire a gang expert who testified during the punishment phase and "allow[ed] said expert to classify [Aleman] as a gang member." In his second issue, Aleman argues his trial counsel was ineffective because his defensive theory was not feasible as a matter of law.

*Previous Conviction*

Aleman argues that by stipulating to his felony conviction of evading arrest with a vehicle, his trial counsel relieved the State of its burden to prove one of the required elements of Paragraph 2—*i.e.*, that Aleman unlawfully possessed a firearm when he shot into Arispe's apartment. *See* TEX. PENAL CODE §§ 19.02(b)(3), 46.04(a). Aleman contends that this stipulation establishes that his trial counsel's performance fell below an objective standard of reasonableness as a matter of law. *See Lopez*, 343 S.W.3d at 143.

Because Aleman did not raise this ground in his motion for new trial, his trial counsel has not had an opportunity to respond to it. We therefore may not conclude his performance was deficient on this ground unless Aleman establishes that the "conduct was so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (internal quotation marks omitted).

On this record, Aleman has not met this burden. As the State notes in its brief, trial counsel could have reasonably pursued this strategy because it minimized the jury's exposure to evidence of Aleman's prior felony conviction during the guilt/innocence phase of trial. This is a plausible basis upon which to conclude that the stipulation was a sound trial strategy. *See Johnson*, 624 S.W.3d at 586; *Dickerson*, 87 S.W.3d at 637.

Tracking the paragraphs in the indictment, the jury was instructed that it could find Aleman guilty of murder if it concluded that he shot through Arispe's door while he was engaged in either unlawful possession of a firearm *or* deadly conduct. *See* TEX. PENAL CODE §§ 46.04(a), 22.05(b)(2). The court's charge did not ask the jury to specify which underlying felony supported its guilty verdict, and Aleman has not argued that the evidence presented at trial was insufficient to support a deadly conduct finding. As a result, Aleman has not established a reasonable probability that but for the stipulation on unlawful possession, "the result of the proceeding would have been different." *See Mitchell*, 68 S.W.3d at 642.

*9-1-1 Call and Surveillance Footage*

Aleman next contends that his trial counsel performed deficiently by failing to make Confrontation Clause objections to the admission of a 9-1-1 call made immediately after the shooting and surveillance videos from a bar Aleman visited before and after the shooting. Again, Aleman did not raise these grounds in his motion for new trial, and his trial counsel has not had an opportunity to respond to them. *See Goodspeed*, 187 S.W.3d at 392.

With regard to the 9-1-1 call, the record does not support Aleman's appellate argument. It is true that Aleman's trial counsel did not use the words "Confrontation Clause" in his objection to the 9-1-1 call. However, in its response to Aleman's trial objection, the State responded that the call was "certainly an excited utterance *and not subject to confrontation clause* given that it was a

request for emergency help" (emphasis added). Because the record shows the State understood Aleman's objection to be the same one Aleman now argues was never made, this claim of ineffectiveness is not "firmly founded in the record[.]" *Thompson*, 9 S.W.3d at 813.

With regard to the surveillance footage, Aleman objected below to the relevance of that evidence, and the record does not show that the State understood his objection as asserting any other grounds. As the State notes, however, "the Confrontation Clause does not require the exclusion of non-testimonial statements." *Ramjattansingh v. State*, 587 S.W.3d 141, 159 (Tex. App.—Houston [1st Dist.] 2019, no pet.). We have reviewed the surveillance camera footage, and while it shows Aleman moving through the bar, its patio, and its parking lot, the sound in the footage consists almost entirely of music being played in the bar and traffic noises outside the bar. The footage does not contain any statements from Aleman or anyone else that could be reasonably construed as testimonial.[1] *See id.* ("In general, a statement is testimonial if a reasonable person would have understood that law enforcement officers were conducting a criminal investigation and collecting evidence for the purpose of prosecution."). The record therefore does not support a conclusion that trial counsel's failure to make a Confrontation Clause objection to this evidence "fell below an objective standard of reasonableness as a matter of law[.]" *Lopez*, 343 S.W.3d at 143; *see also Goodspeed*, 187 S.W.3d at 392.

*Photo of Arispe*

Aleman further argues that his trial counsel should have asserted a predicate objection to State's Exhibit 7. This exhibit consisted of a photo that an investigating officer took of a photo

---

[1] The only clearly discernible statement made by anyone in the footage is Aleman shouting, "Let's go, all of y'all" to several people who then follow him outside. There is no evidence in the record showing that any of those individuals were involved in this offense.

shown on a third party's cell phone; the photo-within-a-photo was taken by Arispe's friend, Angela Cole, and it depicted Arispe approximately six minutes before the shooting.

At trial, Aleman's counsel objected to State's Exhibit 7 on relevancy grounds. But because Cole did not testify at trial, Aleman contends on appeal that his trial counsel should have objected that the State did not lay the proper predicate. Aleman also argues that he "has a right to confront his accuser, Angela Cole, under the Sixth Amendment of the United States Constitution." Aleman did not assert this purported ineffectiveness in his motion for new trial. *See Goodspeed*, 187 S.W.3d at 392.

The detective who took the photo of Cole's phone testified at trial, and he explained that he took that photo with his own phone when he interviewed Cole at the crime scene. He also testified that during his investigation, he was able to determine that the photo-within-a-photo was taken "a few minutes before the shooting took place." Even if Aleman's trial counsel believed this testimony was not sufficient to lay a proper predicate for Exhibit 7 or that Aleman had a constitutional right to confront Cole about the making of the photo, he could have reasonably determined that it was not in Aleman's interest to make any objections that might prompt the State to call Cole as a witness.[2] Because a "reasonably sound strategic motivation can be imagined" for trial counsel's failure to make a predicate objection to State's Exhibit 7, Aleman has not satisfied the first *Strickland* prong on this ground. *See Johnson*, 624 S.W.3d at 586.

*Guilt/Innocence Evidence*

Aleman also contends his trial counsel performed deficiently by failing to call any witnesses during the guilt/innocence phase of trial.[3] He suggests this deficiency arose from his

---

[2] Cole personally witnessed the shooting and made the 9-1-1 call that was played for the jury. During that call, she indicated that both her own children and Arispe's were present and saw the shooting.

[3] Aleman's trial counsel called multiple witnesses during the punishment phase of trial.

trial counsel's purported failure to regularly visit and communicate with him before trial. Aleman's motion for new trial did not explicitly complain about his trial counsel's failure to call witnesses, but it did allege that his trial counsel did not regularly visit him to prepare for trial.

A defense attorney's duty to provide reasonably effective assistance includes "counsel's responsibility to seek out and interview potential witnesses." *Ex parte Sanchez*, 667 S.W.3d 324, 329 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd). To make a showing of ineffective assistance on this basis, Aleman must show "that the [uncalled] witnesses were available and would benefit the defense." *Everage v. State*, 893 S.W.2d 219, 222 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). Here, the record contains no evidence of any available, beneficial witnesses that Aleman's trial counsel failed to call. *See id.* Additionally, the record does not show trial counsel's reasons, if any, for deciding not to call witnesses. *See Mata*, 226 S.W.3d at 430. Accordingly, the record is not sufficiently developed to establish that trial counsel was ineffective solely on that basis.

As to the claim that Aleman's trial counsel did not spend sufficient preparation time with him, the record contains at least some evidence on this issue, including a response offered by Aleman's trial counsel. As support for his motion for new trial, Aleman presented two motions in which he requested the appointment of new counsel because he believed his trial counsel had made only limited efforts to visit and communicate with him. He also presented a jail visitor log that appeared to show his trial counsel only visited him in jail once. But after the trial court denied Aleman's motion for new trial, his trial counsel submitted an affidavit refuting these claims. In the affidavit, trial counsel represented that he met with Aleman "<u>IN-PERSON</u> at least 8-9 times" in both the jail and the courthouse conference room. He also represented that he discussed trial strategy with Aleman "many times—in-person and by Zoom," "promptly complied with reasonable requests for information," "explained all matters to the extent reasonably necessary to

permit Mr. Aleman to make informed decisions about the subject representation," and "discussed and explained all discovery to Mr. Aleman." While he acknowledged "a short time (maybe 45-50 days) where communication was sparse in early 2025," he explained that "this was due to not much activity in the case" during that time.

When the record contains conflicting evidence on a claim of ineffective assistance, we must defer to the trial court's role as factfinder. *See, e.g.*, *Ex parte Mello*, 355 S.W.3d 827, 832 (Tex. App.—Fort Worth 2011, pet. ref'd). Here, the record shows that Aleman and his trial counsel presented very different versions of events on this topic. The record also shows, however, that the trial court denied Aleman's motion for new trial before trial counsel filed his affidavit. As a result, the court did not have an opportunity to consider and resolve the conflict between trial counsel's version of events and Aleman's. Because we cannot resolve that conflict in its place, this record does not permit us to conclude that trial counsel's performance fell below an objective standard of reasonableness as a matter of law. *See, e.g.*, *Thompson*, 9 S.W.3d at 813–14.

*Gang Expert*

In the final subpart of his first issue, Aleman argues that his trial counsel was ineffective during the punishment phase of trial because he did not voir dire the State's gang expert, Greg Longenbaugh, or otherwise challenge Longenbaugh's credentials as a gang expert. He contends that Longenbaugh's testimony that he believed Aleman was a member of the Mexican Mafia "clearly lead to the lengthy prison sentence handed down by the jury." Because Aleman did not assert this ground in his motion for new trial, his trial counsel has not had an opportunity to respond to it. *See Goodspeed*, 187 S.W.3d at 392.

While on the witness stand, Longenbaugh explained that he had testified as a gang expert in other trials; that he was once a lieutenant in Texas's prison system, where he received "on-the-

job training, learning about gang affiliation, tattoos, things of that nature" and personally interacted with gang members "every day"; that he had taught classes on gangs and identifying gang members to probation officers, jailers, and other police officers "for maybe ten years"; that he had spent time interviewing inmates who showed signs of "possible gang affiliation"; and that he had approximately twenty-two years' of experience interacting with gang members and teaching about gangs. He also specifically testified that he "had significant experience with Mexican Mafia," and he opined that based on his knowledge and experience, he believed Aleman's tattoos indicated he was a member.

Aleman is correct that his trial counsel did not take Longenbaugh on voir dire to challenge his credentials. His trial counsel did, however, object that the court should decline to recognize Longenbaugh as an expert on gangs because "that's not been established that's even a recognized field of study or a science of any kind whatsoever. It's opinion and speculation, double opinion and speculation as to if Mr. Aleman fits that criteria[.]" Trial counsel's decision to make this objection in lieu of interrupting the trial proceedings to conduct a voir dire examination was not so outrageous that no competent attorney would have chosen that route. *See id.* Accordingly, Aleman has not satisfied *Strickland*'s first prong on this complaint.

Having rejected each of Aleman's sub-issues, we overrule his first issue.

*Defensive Theories*

In his second issue, Aleman argues his trial counsel was ineffective because the defensive theory he presented was not feasible as a matter of law. Specifically, Aleman questions his trial counsel's decision to pursue the submission of manslaughter and criminally negligent homicide as lesser-included offenses of felony murder. He contends this strategy shows his trial counsel did not appropriately research the law because manslaughter and criminally negligent homicide are

not lesser-included offenses of felony murder as a matter of law. The State responds that trial counsel's strategy was reasonable "given the facts of the case and the substantial evidence of [Aleman's] guilt."

As a threshold matter, we note that Aleman's motion for new trial—which was filed by Aleman's current appellate counsel, not his trial counsel—explicitly argued that Aleman "was entitled to a lesser included offense instruction on manslaughter which was denied by the Court" and that "[t]he Court committed material error likely to injure [Aleman's] rights as follows: The jury was misdirected in the jury charge by not receiving instructions on a lesser included offense of manslaughter." Because the motion for new trial only questioned the trial court's actions on this issue, rather than trial counsel's strategy, Aleman's trial counsel has not had an opportunity to respond to this argument. *See id.* And because Aleman's appellate counsel clearly believed, at least at the time of the filing of the motion for new trial, that Aleman's trial counsel's defensive theory was valid, we cannot say that this alleged ineffectiveness is either "firmly founded in the record," *see Thompson*, 9 S.W.3d at 813, or so outrageous that no competent counsel would have pursued it, *see Goodspeed*, 187 S.W.3d at 392.

But even if we assume trial counsel's defensive strategy was unreasonable as a matter of law, Aleman has not established a reasonable probability that but for this purported error, "the result of the proceeding would have been different." *See Mitchell*, 68 S.W.3d at 642. He has not, for example, identified any other defensive strategies that trial counsel could or should have presented instead. Accordingly, he has not established prejudice sufficient to satisfy the second prong of *Strickland*.

We overrule Aleman's second issue.

**CONCLUSION**

We affirm the judgment of conviction.

Lori I. Valenzuela, Justice

DO NOT PUBLISH